# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP2265-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin,<br>      Plaintiff-Respondent,<br>  v.<br>Carrie E. Counihan,<br>      Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
385 Wis. 2d 211,923 N.W.2d 180 - Unpublished

| | |
|---|---|
| OPINION FILED: | February 13, 2020 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 21, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Door |
|   JUDGE: | David L. Weber |

JUSTICES:

ANN WALSH BRADLEY, J. delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ZIEGLER, DALLET, and HAGEDORN, JJ., joined, and REBECCA GRASSL BRADLEY and KELLY, JJ., joined with respect to ¶¶39-51. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which KELLY, J., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent, there was a brief filed by *Courtney K. Lanz,* assistant attorney general, with whom on the brief was *Joshua L. Kaul* attorney general there was an oral argument by *Courtney K. Lanz.*

For the defendant-appellant-petitioner, there were briefs filed by *Ana L. Babcock* and *Babcock Law, LLC*, Green Bay. There was an oral argument by *Ana L. Babcock.*

**2020 WI 12**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP2265-CR
 (L.C. No. 2015CF41)

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin,**

   **Plaintiff-Respondent,**

 **v.**

**Carrie E. Counihan,**

   **Defendant-Appellant-Petitioner.**

**FILED**

**FEB 13, 2020**

Sheila T. Reiff
Clerk of Supreme Court

ANN WALSH BRADLEY, J. delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ZIEGLER, DALLET, and HAGEGORN, JJ.., joined, and REBECCA GRASSL BRADLEY and KELLY, JJ.., joined with respect to ¶¶39-51. REBECCA GRASSL BRADLEY, J., filed a concurring opinion, in which KELLY, J., joined.

REVIEW of a decision of the Court of Appeals. *Modified, and as modified, affirmed.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Carrie E. Counihan, seeks review of an unpublished, authored decision of the court of appeals affirming her judgment of conviction and the

denial of her motion for postconviction relief.[1] She asserts that the circuit court violated her right to due process at sentencing and, alternatively, that her trial counsel provided ineffective assistance at sentencing.

¶2 Specifically, she argues that the circuit court denied her due process at sentencing by failing to provide her with notice that it would consider previously unknown information first raised by the circuit court at sentencing. Further, Counihan contends that her trial counsel was ineffective for failing to object to the consideration of such information and for failing to seek an adjournment to allow time to investigate and review the information on which the circuit court relied.

¶3 In response, the State asserts that Counihan forfeited her direct challenge to the previously unknown information considered at sentencing because she failed to object at the sentencing hearing. It further contends that Counihan's trial counsel was not ineffective for failing to object or seek an adjournment.

¶4 We conclude that where previously unknown information is raised by the circuit court at the sentencing hearing, a defendant does not forfeit a direct challenge to the use of the information

---

[1] State v. Counihan, No. 2017AP2265-CR, unpublished slip op. (Wis. Ct. App. Nov. 6, 2018) (affirming the judgment and order of the circuit court for Door County, David L. Weber, Judge). The appeal was decided by one judge, Judge Mark Seidl, pursuant to Wis. Stat. § 752.31(2)(f) (2015-16).

All subsequent references to the Wisconsin statutes are to the 2015-16 version unless otherwise indicated.

by failing to object at the sentencing hearing. Under the facts of this case, Counihan appropriately raised the alleged error in a postconviction motion.

¶5 Further, we conclude that Counihan's due process rights were not violated by the circuit court's use of the previously unknown information regarding similarly situated defendants. Because there was no due process violation, we need not address Counihan's alternative argument that her counsel provided ineffective assistance at sentencing.

¶6 Accordingly, we modify the decision of the court of appeals, and as modified, affirm.

I

¶7 As part of a plea agreement, Counihan pleaded no contest to five misdemeanor counts of theft in a business setting.[2] The charges stemmed from allegations that, while Counihan was the executive director of the Door County Humane Society, she used an organizational credit card to pay personal expenses totaling over $22,000.

¶8 Pursuant to the plea agreement, the parties jointly recommended that the circuit court withhold sentence and place Counihan on probation for up to three years, which could end any time after two years if all other conditions of probation were fulfilled. The joint recommendation also included conditions that Counihan pay restitution along with fines and costs, pen a written apology to the Humane Society, and serve 60 days of conditional

---

[2] See Wis. Stat. § 943.20(1)(b).

jail which would be stayed as long as Counihan complied with all other probation conditions.

¶9 After hearing from both parties and several witnesses at the sentencing hearing, the circuit court began its sentencing remarks by explaining its methodology in determining the appropriate sentence. The circuit court explained that it had read the file in detail, including the criminal complaint, information and police report. It further indicated that it had read all victim impact statements, as well as several other letters that the court had received and some credit card entries submitted by defense counsel.

¶10 Most relevant to the issue we are examining in this appeal, the circuit court also indicated that as part of its sentencing methodology it had reviewed the sentences imposed in other similar cases within the county. Specifically, the circuit court stated, "Perhaps most significantly, I pulled all files that we could find in Door County where somebody has pled to theft in a business-type setting. There were about six or seven of them that we could find, and I have reviewed those files in detail."

¶11 The circuit court provided for the record the seven case numbers of the cases it reviewed and stated that "[s]ome of the themes and dynamics of these cases were very interesting to me." It subsequently described the facts of these cases and the sentences imposed as follows:

> The amount stolen in these cases ranged over just several
> thousand dollars to as much as $300,000. Every one of
> the defendants in these cases, except one, spent time in
> jail. Every single one of them. The one person that

4

did not spend time in jail paid all of the money back before sentencing. It did not involve a public entity, it was a private association. The jail time for the others ranged from 15 days in jail to up to a year in jail. Several people spent a year in jail. Several spent six months.

Every single one of those defendant[s] was placed on probation; in other words, the sentence was actually withheld and the jail was placed on them as a condition of probation.

After discussing the jail and probation ordered in the other cases, the circuit court also observed that in the other cases "[a]ll were ordered to pay fines and restitution. Every single one of them."

¶12 Continuing in its remarks, the circuit court found one of the other cases particularly analogous to Counihan's case. It emphasized, however, that every case is different.

Now, this case here is most like a case where a woman stole approximately $30,000 from a local business, was not a charity, and stole the money over many months. And that particular woman spent 11 months in jail and was ordered to pay full restitution.

Now, this Court realizes——this Court, this person, this attorney practiced law for many years, 30 years, and I certainly understand that every single case is different. Every case has a nuance. So these prior cases, these other cases in Door County, have provided this Court guidance, but I am not relying solely on these other cases.

¶13 With respect to the facts of this case, the circuit court observed that Counihan was in a position of trust, and that she committed the thefts over the course of many years. It further noted the effect Counihan's crimes had on the Humane Society and on nonprofit organizations in general: "to the extent that donors will be less likely to donate money for fear that their money will

5

be stolen, or that they would have a question about it, is very, very concerning to this Court."

¶14 Prior to formally pronouncing the sentence, the circuit court asked Counihan if she knew "any reason why sentence should not be pronounced . . . ." Counihan responded, "No, Your Honor."

¶15 Subsequently, the circuit court rejected the parties' joint recommendation and sentenced Counihan to nine months in jail on each count, to be served concurrently. It found such a sentence to be consistent with the sentences ordered in the similar cases in the county it had considered: "All other cases, except one, received jail time, and I don't see any reason why you shouldn't serve jail time."

¶16 Probation was not ordered because in the circuit court's view, "probation would unduly depreciate the seriousness of the offenses here." The circuit court further ordered Counihan to pay restitution, fines and court costs. After the sentence had been handed down and before concluding proceedings, the circuit court asked if either Counihan or the State had "anything further" to discuss, and each responded in the negative.

¶17 Counihan moved for postconviction relief.[3] As relevant here, she argued that her counsel was ineffective at sentencing

---

[3] Counihan filed two motions for postconviction relief. In her first motion, filed pro se, Counihan directly challenged the circuit court's reliance on the similar Door County cases. Although Counihan did not style her challenge as a due process claim, we liberally construe pro se pleadings. See State ex rel. L'Minggio v. Gamble, 2003 WI 82, ¶16, 263 Wis. 2d 55, 667 N.W.2d 1. Counihan's second motion for postconviction relief, filed by counsel, focused on ineffective assistance.

for failing to object and failing to seek an adjournment to review the similar Door County cases the circuit court cited in fashioning its sentence.[4]

¶18 Following a Machner[5] hearing, the circuit court denied Counihan's postconviction motion. As relevant here, it determined that Counihan's counsel at sentencing was not ineffective, reasoning that "his tactical decision not to object or ask for a recess or to try to make distinguishing arguments from those cases" did not fall "below an objective standard of care . . . ." Further, the circuit court found that even if the attorney's representation was deficient, "I don't find that it would have changed anything."

¶19 In denying Counihan's motion, the circuit court reiterated that it did not rely solely on the other Door County cases: "I came to a conclusion independently of any of these cases, but I wanted to use the cases to make sure they supported what I was going to do." The circuit court further commented on the propriety of seeking out similar cases from the county, stating:

> [W]hen I sentenced Miss Counihan I had been on the bench for about three or four months at that

---

[4] Counihan also asserted that her counsel was ineffective at sentencing for additional reasons not argued here. She further asserted that neither her counsel nor the circuit court properly informed her of her right to appeal. See Wis. Stat. § 973.18(2). This issue was not raised before this court and we do not address it further.

[5] See State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

time. . . . [W]hat my goal was in conducting this inquiry into other cases was to determine what the institutional memory of this Court was, because I didn't have it myself. I felt like if I had been a judge for twenty years, of course I would have fallen back on my memory of what I had done in other cases. I probably wouldn't need to look at other cases literally. I would look at them in my mind.

And I think judges do that all the time. They can't erase their memories. But I didn't have that memory, so it felt, in my opinion, to me that I had the responsibility——I had the responsibility not only to Miss Counihan, but to the community, to determine what had been done in other cases.

And I didn't do so in order to get a litmus test or a necessarily a recipe that I could come up with a sentence for Miss Counihan. I felt like I want to know if what I was going to do with Miss Counihan, what I was going to sentence her to, was consistent with what had been done in the past.

¶20 Counihan appealed, asserting that the circuit court's reliance on past case files without providing notice violated her due process rights. In the alternative, she maintained her claim that her counsel at sentencing was ineffective for failing to object or request an adjournment for the purpose of investigating the circuit court's cited cases.

¶21 The court of appeals rejected Counihan's arguments and affirmed the circuit court. It determined first that Counihan forfeited her due process argument because she did not object to the use of the similar Door County cases at the sentencing hearing. State v. Counihan, No. 2017AP2265-CR, unpublished slip op., ¶10 (Wis. Ct. App. Nov. 6, 2018). Accordingly, the court of appeals did not address the merits of Counihan's claim that the use of

8

such information by a circuit court constitutes a due process violation. Id.

¶22 Second, the court of appeals concluded that Counihan failed to demonstrate ineffective assistance of counsel because she did not establish that she was prejudiced by any allegedly deficient performance. Id., ¶13. Specifically, the court of appeals determined that "Counihan cannot show that but for her attorney's alleged error, there is a reasonable probability that her sentence would have been different." Id., ¶14. It reached this conclusion because in its view "[t]he record supports the circuit court's finding at the postconviction hearing that if the Door County cases played any role in her sentence, the role was minimal." Id.

II

¶23 We are called upon to determine whether Counihan forfeited her direct challenge to the use of previously unknown information raised by the circuit court at sentencing. If Counihan did not forfeit this direct challenge, then we must address the merits of her argument that the circuit court violated her right to due process. These issues present questions of law that we review independently of the determinations rendered by the circuit court and court of appeals. See State v. Corey J.G., 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998); State v. Loomis, 2016 WI 68, ¶29, 371 Wis. 2d 235, 881 N.W.2d 749.

III

¶24 We begin by addressing whether Counihan forfeited her direct due process challenge to the circuit court's use of

9

previously unknown information raised by the circuit court at sentencing without providing her with notice.  Subsequently, we address the merits of Counihan's due process challenge to the use of such information at sentencing.

¶25  Forfeiture is the failure to make the timely assertion of a right.[6]  State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).  Some rights are forfeited when they are not claimed at trial, and a mere failure to object constitutes forfeiture of the right on appellate review.  Id., ¶30.

¶26  The purpose of the forfeiture rule is to enable the circuit court to avoid or correct any error as it comes up, with minimal disruption of the judicial process and maximum efficiency.  Id.; see Townsend v. Massey (In re Guardianship of Willa L.), 2011 WI App 160, ¶26, 338 Wis. 2d 114, 808 N.W.2d 155.  Such a practice encourages timely objections and obviates the need for appeal.  State v. Erickson, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999); State v. Huebner, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727.

¶27  Further, the forfeiture rule gives the parties and the circuit court notice of an issue and a fair opportunity to address the objection.  Ndina, 315 Wis. 2d 653, ¶30.  It additionally

---

[6] "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts."  State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.  "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right."  Id. (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).

"encourages attorneys to diligently prepare for and conduct trials" and "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." Id. The forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case. State ex rel. Universal Processing Servs. of Wis., LLC v. Cir. Ct. of Milwaukee Cty., 2017 WI 26, ¶53, 374 Wis. 2d 26, 892 N.W.2d 267.

¶28 Generally, if a claim is forfeited, we address that claim in the context of ineffective assistance of counsel. See Erickson, 227 Wis. 2d at 766. That is, the defendant must demonstrate that counsel's failure to object constituted deficient performance and that such deficient performance prejudiced the defendant. State v. Maloney, 2005 WI 74, ¶14, 281 Wis. 2d 595, 698 N.W.2d 583 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).

¶29 The court of appeals here determined that Counihan forfeited her challenge to the circuit court's use of the analogous Door County cases when she failed to object at the sentencing hearing. Counihan, No. 2017AP2265-CR, unpublished slip op., ¶10. It further refused to ignore the forfeiture, thereby declining to address the underlying merits of the issue. Id.

¶30 Counihan contends that the court of appeals erred by applying the forfeiture rule to her claim. In Counihan's view, the forfeiture rule should not apply to information first disclosed during the sentencing hearing because such an application undermines the values the forfeiture rule intends to protect.

11

¶31 With respect to the underlying facts of this case, we agree with Counihan. When previously unknown information is first raised by the circuit court at the sentencing hearing, the defendant has not had a chance to investigate or rebut the information. At the time the information is raised, a defense attorney is put in a difficult position if the forfeiture rule is to be applied——either object to the use of the information and risk that the details will be detrimental to the client or stay silent and forfeit the argument should the information be beneficial to the client.

¶32 Applying forfeiture under such circumstances would not promote judicial efficiency, but instead would actually hinder it. Rather than forfeit an issue, defendants would likely seek adjournments for purposes of investigation, thus delaying sentencing hearings. Such a practice would run counter to the stated purposes of the forfeiture rule of maximizing the efficiency of the judicial process. See Ndina, 315 Wis. 2d 653, ¶30.

¶33 Contrary to the State's argument, Counihan's negative response when the circuit court asked her if she knew "any reason why sentence should not be pronounced" prior to setting forth the sentence does not indicate that forfeiture should be applied. Likewise, the circuit court perfunctorily asking if either Counihan or the State had "anything further" to discuss before the close of the hearing has no effect on the outcome. Although Counihan could have spoken up at either of these points, and it is certainly the best practice to do so, it does not behoove the

interests protected by the forfeiture rule to require such an objection lest the claim be forfeited.

¶34 The State points us to several cases to support the broad proposition that defendants can incur forfeiture by failing to object at sentencing. Yet, none of these cases deals with the specific circumstances we review here——where information was first raised by the court in its sentencing remarks. The present situation is different from a breach of a plea agreement,[7] a claim of inaccurate information in a report introduced by defense counsel[8] or in a presentence investigation report,[9] or the consideration of behavior underlying expunged convictions.[10]

¶35 Unlike the claim at issue here, the aforementioned claims involve information to which a defendant would have access and the ability to investigate prior to the sentencing hearing. However, when the circuit court first raises information during its sentencing remarks, a defendant has been deprived of the opportunity to investigate and defense counsel must act on the basis of incomplete information. This weighs against the

---

[7] State v. Robinson, 2001 WI App 127, ¶13, 246 Wis. 2d 180, 629 N.W.2d 810.

[8] State v. Benson, 2012 WI App 101, ¶17, 344 Wis. 2d 126, 822 N.W.2d 484.

[9] State v. Mosley, 201 Wis. 2d 36, 46, 547 N.W.2d 806 (Ct. App. 1996).

[10] State v. Leitner, 2001 WI App 172, ¶41, 247 Wis. 2d 195, 633 N.W.2d 207, aff'd 2002 WI 77, 253 Wis. 2d 449, 646 N.W.2d 341.

application of forfeiture and in favor of allowing a defendant to first raise the issue in a postconviction motion.

¶36 Our refusal to apply forfeiture in the circumstances presented is consistent with this court's precedent. Specifically, in State v. Grady, we stated that the defendant "did not waive the issues presented because he filed a postconviction motion pursuant to Wis. Stat. § 809.30(2)(h). Filing a postconviction motion is a timely means of raising an alleged error by the circuit court during sentencing." 2007 WI 81, ¶14 n.4, 302 Wis. 2d 80, 734 N.W.2d 364 (citing State v. Gallion, 2004 WI 42, ¶14, 270 Wis. 2d 535, 678 N.W.2d 197).[11] Further, State v. Tiepelman is demonstrative of the general practice that challenges to information at sentencing are brought via postconviction motion. 2006 WI 66, ¶7, 291 Wis. 2d 179, 717 N.W.2d 1. The alleged error in sentencing here is an issue that can likewise be first raised in a postconviction motion.

¶37 Accordingly, we conclude that where previously unknown information is raised by the circuit court at the sentencing hearing, a defendant does not forfeit a direct challenge to the use of the information by failing to object at the sentencing hearing. Under the facts of this case, Counihan appropriately raised the alleged error in a postconviction motion. Because the

---

[11] Cases sometimes use the words "waiver" and "forfeiture" interchangeably. Ndina, 315 Wis. 2d 653, ¶29. Indeed, the Grady court did just this. When it spoke of "waiver," it was actually referring to "forfeiture." See State v. Grady, 2007 WI 81, ¶14 n.4, 302 Wis. 2d 80, 734 N.W.2d 364.

14

court of appeals determined that Counihan forfeited such a challenge, we modify the decision of the court of appeals.

IV

¶38 Because Counihan did not forfeit her direct due process challenge to the use of previously unknown information at sentencing, we next address the merits of that claim.

¶39 As part of the constitutional due process guarantee that a defendant be sentenced on reliable information, the defendant has the right to rebut evidence that is admitted by a sentencing court. State v. Spears, 227 Wis. 2d 495, 508, 596 N.W.2d 375 (1999). "Obviously, if sentencing information is kept from the defendant, [the defendant] cannot exercise this right." State v. Lynch, 2006 WI App 231, ¶24, 297 Wis. 2d 51, 724 N.W.2d 656.

¶40 Circuit courts are required to set forth on the record the reasons for sentences they impose. Gallion, 270 Wis. 2d 535, ¶¶38-39. This includes explanation of the objectives of the sentence, which may be, without limitation, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others. Id., ¶¶40-41. The facts relevant to these objectives and an explanation of why the particular component parts of the sentence imposed advance the specified objectives must also be set forth on the record. Id., ¶42.

¶41 "Courts must also identify the factors that were considered in arriving at the sentence and indicate how those

factors fit the objectives and influence the decision."[12]  Id.,
¶43.  We have further encouraged circuit courts to "refer to
information provided by others[,]" such as recommendations of
counsel and any presentence investigation report, in fashioning a
sentence.  Id., ¶47.

¶42 Counihan contends that the circuit court's consideration
of the sentences given in similar cases without providing her with
notice that it would do so violates her due process right to rebut
information presented at sentencing.  She asserts that she is
entitled to resentencing because she was not given the opportunity

---

[12] Such factors include:

> (1) Past record of criminal offenses; (2) history of
> undesirable behavior pattern; (3) the defendant's
> personality, character and social traits; (4) result of
> presentence investigation; (5) vicious or aggravated
> nature of the crime; (6) degree of the defendant's
> culpability; (7) defendant's demeanor at trial; (8)
> defendant's age, educational background and employment
> record; (9) defendant's remorse, repentance and
> cooperativeness; (10) defendant's need for close
> rehabilitative control; (11) the rights of the public;
> and (12) the length of pretrial detention.

State v. Gallion, 2004 WI 42, ¶43 n.11, 270 Wis. 2d 535, 678
N.W.2d 197 (quoting Harris v. State, 75 Wis. 2d 513, 519-20, 250
N.W.2d 7 (1977)).

We have also recognized additional factors as appropriate
considerations, such as dismissed and read-in charges and the
effect of the crime on the victim. Id. (citing Austin v. State,
49 Wis. 2d 727, 183 N.W.2d 56 (1971); State v. Jones, 151
Wis. 2d 488, 444 N.W.2d 760 (Ct. App. 1989)).

16

to review the information in the other case files referenced and on which the circuit court relied.[13]

¶43 We disagree with Counihan's argument. "[I]n sentencing, a trial judge may appropriately conduct an inquiry broad in scope and largely unlimited either as to the kind of information considered or the source from which it comes." Handel v. State, 74 Wis. 2d 699, 703, 247 N.W.2d 711 (1976). Consistent with this mandate in Handel, we expressly stated in Gallion that circuit courts "may . . . consider information about the distribution of sentences in cases similar to the case before it." Gallion, 270 Wis. 2d 535, ¶47.

¶44 Such a practice is congruent with the general policy that "consistency in criminal sentencing is desirable . . . ." In re Felony Sentencing Guidelines, 120 Wis. 2d 198, 203, 353 N.W.2d 793 (1984) (per curiam). Indeed, the court's statement in Gallion does not limit the circuit court to considering only "the distribution of sentences in cases similar to the case before it" that are within its unassisted recollection. See Gallion, 270 Wis. 2d 535, ¶47.

¶45 The circuit court's actions in this case are fundamentally different from those in In re Judicial Disciplinary Proceedings Against Piontek, 2019 WI 51, 386 Wis. 2d 703, 927 N.W.2d 552, to which Counihan attempts to draw a parallel. As relevant here, in Piontek, the circuit court conducted its own

---

[13] Notably, Counihan does not argue that the information contained within the other case files was inaccurate.

independent internet research regarding a criminal defendant's nursing licenses and related matters. Id., ¶16. From such research, the circuit court discovered what it believed to be incriminating information from the states of Texas and Illinois and incorrectly deduced that the defendant had never been licensed as a nurse in Illinois. Id.

¶46 Without providing notice to the parties or their attorneys, the circuit court brought up its independent investigation at the sentencing hearing. Id., ¶¶17-18. In fashioning the sentence, the circuit court relied on the incorrect information it had obtained from its internet research. Id., ¶18. Imposing judicial discipline, this court stated that "it is clearly improper for a judge to both conduct an independent investigation and to fail to give a party a chance to respond to the judge's misinformed allegations based on that investigation." Id., ¶37.

¶47 The circuit court's "investigation" in this case was of a completely different nature. Unlike in Piontek, the circuit court here did not investigate facts or gather evidence related to Counihan's case. Instead, it merely conducted a file review to "determine what the institutional memory of [the] Court was" due to its relative inexperience.

¶48 We are loath to adopt a rule that would prevent a circuit court from accessing its institutional memory, thereby requiring it to view each exercise of its discretion in a vacuum. Such a rule would run counter to the consistency in criminal sentencing that we have previously stated is "desirable." Felony Sentencing,

18

120 Wis. 2d at 203.[14] The circuit court's actions in this case are no different from long-tenured judges reaching back into their memories without the aid of hard-copy files.

¶49 Further, the failure to provide notice of the cases considered likewise does not violate due process. When a circuit court accesses its institutional memory without the aid of written material, it is not required to inform the parties of all past cases that came to mind. The use of hard copy files does not occasion a different rule.

¶50 Nothing in this record indicates that Counihan did not receive the individualized sentence to which she is entitled. See Gallion, 270 Wis. 2d 535, ¶48 ("Individualized sentencing, after all, has long been a cornerstone to Wisconsin's criminal justice jurisprudence."); Loomis, 371 Wis. 2d 235, ¶¶67-68, 74 (recognizing the due process implications of sentences based on group data rather than individualized determinations). On the

---

[14] See also Bertrall L. Ross II, Reconciling the Booker Conflict: A Substantive Sixth Amendment in a Real Offense Sentencing System, 4 Cardozo Pub. L. Pol'y & Ethics J. 725, 774 (2006) ("Judges have experience in sentencing such that they have created an institutional memory that allows them to rank crime and the culpability of criminals relevant to each other."); id. at 774 n.227 ("The institutional memory does not necessarily apply to new judges, but through training and collaboration with other judges, even new judges will have a greater understanding of proportionate ranking of crimes and other relevant characteristics."). A file review such as that conducted by the judge in this case allows a new judge to access the same information the judge would learn through "collaboration with other judges," and can be a useful option for judges in counties with a low number of judges (or even a single judge) in striving for consistency in their exercises of discretion.

contrary, the circuit court referenced numerous facts specific to Counihan's background on which it based its sentence, including her educational background, the position of trust she held at the Humane Society, and the fact that the thefts took place over a period of many years. It also appropriately focused on the nature and gravity of the offense, and the effect of the offense on the community's willingness to support nonprofit organizations. The circuit court's remarks in this case taken as a whole reflect the individualized sentence that Gallion and due process require.

¶51 Accordingly, we conclude that Counihan's due process rights were not violated by the circuit court's use of the previously unknown information regarding similarly situated defendants.[15]

V

¶52 In sum, we conclude that where previously unknown information is raised by the circuit court at the sentencing hearing, a defendant does not forfeit a direct challenge to the use of the information by failing to object at the sentencing hearing. Under the facts of this case, Counihan appropriately raised the alleged error in a postconviction motion.

---

[15] Because the claim was not forfeited and we address the merits of Counihan's argument directly, we need not address her alternative argument regarding ineffective assistance of counsel. Even if we did, we would conclude that because there was no due process violation, any objection to the consideration of the analogous Door County cases would have been meritless. The failure to raise a meritless objection does not constitute deficient performance. See State v. Dalton, 2018 WI 85, ¶53, 383 Wis. 2d 147, 914 N.W.2d 120.

¶53  Further, we conclude that Counihan's due process rights were not violated by the circuit court's use of the previously unknown information regarding similarly situated defendants. Because there was no due process violation, we need not address Counihan's alternative argument that her counsel provided ineffective assistance at sentencing.

¶54  Accordingly, we modify the decision of the court of appeals, and as modified, affirm.

*By the Court.*—The decision of the court of appeals is modified, and as modified, affirmed.

¶55 REBECCA GRASSL BRADLEY, J. *(concurring).* I agree with the majority that Counihan's due process claim fails. A circuit court's consideration of sentences imposed in similar cases does not offend a defendant's due process rights. I join ¶¶39-51 of the majority opinion. However, I write separately because I disagree with the majority's decision to address forfeiture and the merits of Counihan's due process claim rather than disposing of the case under an ineffective assistance of counsel analysis.

¶56 Because Counihan's counsel did not object during the sentencing hearing, this case should have been resolved under the rubric of ineffective assistance of counsel. See State v. Erickson, 227 Wis. 2d 758, 766-68, 596 N.W.2d 749 (1999) (explaining that when defense counsel fails to object in criminal cases, appellate courts typically "analyze the waiver within the ineffective assistance of counsel framework."). During the Machner hearing,[1] Counihan's counsel expressed a reasonable, strategic basis for not objecting to the sentencing court's consideration of sentences in former cases in fashioning Counihan's sentence. The assistance counsel provided to Counihan was not ineffective. That should suffice to end the analysis and defeat Counihan's claims. Instead, the majority disregards the ineffective assistance of counsel rubric in order to address the issues of forfeiture and due process. Because the majority's due process analysis is correct, I join it. In choosing to reach the

---

[1] State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

1

merits of forfeiture, however, the majority crafts an overly-broad new rule of law that will allow defendants to avoid raising ineffective assistance of counsel claims in hopes of successfully persuading appellate courts to apply a discretionary forfeiture exception. Because I would not reach the merits of Counihan's claims, but nevertheless reach the same result as the majority under an ineffective assistance of counsel analysis, I respectfully concur.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

¶57 When a defendant bases her appeal on trial counsel's failure to object, we review the case under the ineffective assistance of counsel rubric. "The absence of any objection warrants that we follow 'the normal procedure in criminal cases,'" which is to address the alleged forfeiture "within the rubric of the ineffective assistance of counsel." State v. Carprue, 2004 WI 111, ¶¶36-47, 274 Wis. 2d 656, 683 N.W.2d 31 (quoted and cited sources omitted); see also Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986) (in absence of objection, error should be analyzed under ineffective assistance of counsel standards, even when error is of constitutional dimension). Reviewing the Machner[2] hearing

---

[2] The Machner court held: "[I]t is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel. We cannot otherwise determine whether trial counsel's actions were the result of incompetence or deliberate trial strategies. In such situations, then, it is the better rule, and in the client's best interests, to require trial counsel to explain the reasons underlying his handling of a case." 92 Wis. 2d at 804. The Machner hearing affords trial counsel the opportunity to explain the reasons for his choices and assists the circuit court in deciding whether trial counsel provided ineffective assistance.

transcript in this case shows that Counihan's lawyer gave her effective assistance.

¶58 During the Machner hearing, Counihan's defense lawyer repeatedly explained why he did not object to the sentencing court's reference to similar cases in arriving at Counihan's sentence: "I can't say it was so out-of-the-box as to be concerning to -- concerning to me overall. Judges do that all the time about what -- what they think the going rate is for something or what the guidelines are for a particular offense in the county." In fact, defense counsel perceived the circuit court's consideration of this information as favorable for his client: "I thought it was . . . kind of thoughtful that [the judge] was being so measured." Defense counsel believed examination of prior cases would likely prevent the circuit court from imposing too high a sentence in response to strong community anger over the defendant's crime: "[T]hat sort of research to figure out if there has been a case like that in the past, I can see where the judge would be interested to know -- to know to make sure that he's not punishing -- overpunishing, despite the fact there's so many angry people here." When asked if he thought it would have been helpful for him to review the prior cases the sentencing court referenced, Counihan's trial lawyer said: "If there was a benefit it would have been tremendously minimal" because Counihan's actions were more aggravated than the conduct of similarly-charged defendants in other cases. When asked whether his strategy was to avoid repeatedly objecting during sentencing because he thought repeated objections would "cause more harm" to his client's case, Counihan's

3

defense lawyer answered in the affirmative, "Yeah[]" and "I didn't want to buy my client an extra month." He also testified that he did not object or seek an adjournment because the outgoing district attorney had offered a favorable plea deal for Counihan, which defense counsel feared the newly elected district attorney might revoke. In summary, Counihan's defense counsel declined to object to what he recognized as a typical practice of circuit courts, making this decision in consideration of his client's best interests.

¶59 Because there was nothing objectionable about the circuit court's consideration of sentences imposed in prior cases, Counihan's counsel did not provide ineffective assistance. Even if an argument could be made that defense counsel should have objected, his testimony at the Machner hearing disclosed ample strategic reasons why he chose not to. Instead of deciding the case on these well-established grounds, the majority allowed Counihan to present a substantive issue, thereby opening the door for defendants to dodge the previously prevailing ineffective assistance of counsel rubric on appeal, a tougher hurdle to overcome than a review on the merits.[3] The majority's new procedure allows defendants to do an end run around ineffective assistance

---

[3] "A criminal defendant has the constitutional right to effective assistance of counsel." State v. Sholar, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89; see also Strickland v. Washington, 466 U.S. 668, 686 (1984). "To establish the assistance a defendant received was ineffective, he must prove two elements: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced [him]. Sholar, 381 Wis. 2d 560, ¶32.

claims, encouraging appellate counsel to instead argue the merits of an issue in postconviction motions and obviating the need for a Machner hearing at all. The whole purpose of a Machner hearing in this context is to explore the reason why an attorney did not object at sentencing and if the attorney presents a reasonable basis for not objecting, the defendant's claim fails, and the case is over. That is how the court should have decided this case. Instead, this court's disposition will allow appellate counsel to pursue a different strategy than trial counsel even if trial counsel provided effective assistance, resulting in many more appeals on the merits in cases that should end at the postconviction motion stage.

## II. FORFEITURE

¶60 Because the majority chose to focus on forfeiture in deciding this case, an overview of the application of this doctrine in Wisconsin merits discussion. Forfeiture results from a defendant's failure to timely assert her rights. State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612 (citation omitted); majority op., ¶25. Forfeiture has long been engrained in procedural law. See Yakus v. United States, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar . . . than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." (citations omitted)); see also Clements v. Macheboeuf, 92 U.S. 418, 425 (1875) ("Matters not assigned for error will not be examined[.]"). "The rule preventing an appellate court from considering an issue not

5

raised in the trial [court] is as old as the common law system of appellate review." Robert J. Martineau, Considering New Issues on Appeal: The General Rule and the Gorilla Rule, 40 Vand. L. Rev. 1023, 1061 (1987).

¶61 "The purpose of the 'forfeiture' rule is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal." Ndina, 315 Wis. 2d 653, ¶30 (emphasis added; footnote omitted). Other "underlying justifications for the raise or lose rule are the adversarial process, judicial efficiency and finality, and respect for the differing roles of the trial and appellate courts." Tory A. Weigand, Raise or Lose: Appellate Discretion and Principled Decision-Making, 17 Suffolk J. Trial & App. Advoc. 179, 183 (footnote omitted) (referring to forfeiture as the "raise or lose" rule). In State v. Huebner, this court expressed the "several important objectives" of the rule:

> Raising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal. It also gives both parties and the trial judge notice of the issue and a fair opportunity to address the objection. Furthermore, the . . . rule encourages attorneys to diligently prepare for and conduct trials. Finally, the rule prevents attorneys from "sandbagging" errors, or failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal. For all of these reasons, the . . . rule is essential to the efficient and fair conduct of our adversary system of justice.

2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727 (internal citations omitted); see also Ndina, 315 Wis. 2d 653, ¶30. Huebner referenced these objectives while using the term "waiver," but the

court meant "forfeiture," as our later cases make clear. See Huebner, 235 Wis. 2d 486, ¶11 n.2.[4] "The need for the traditional forfeiture rule . . . is obvious. Without that incentive to raise legal objections as soon as they are available, the time of lower court judges and of juries would frequently be expended uselessly, and appellate consideration of difficult questions would be less informed and less complete." Freytag v. Comm'r of Internal Revenue, 501 U.S. 868, 900 (1991) (Scalia, J., concurring in part and concurring in the judgment) (emphasis added). For all of these reasons, forfeiture is "essential to the orderly administration of justice." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2472 (1971).

¶62 While the rationale underlying the forfeiture rule is clearly established, the application of the rule by our courts has been anything but discernable. In some cases, we apply the forfeiture rule when a party fails to timely object. See, e.g., State v. Pinno, 2014 WI 74, ¶¶2, 57, 66, 68, 356 Wis. 2d 106, 850 N.W.2d 207 (holding that two defendants who knew of a courtroom closure and failed to object forfeited the right to a public trial); Village of Trempealeau v. Mikrut, 2004 WI 79, ¶¶3, 6, 15,

---

[4] In State v. Huebner, this court recognized that its use of the term "waiver" was imprecise and really means "forfeiture." 2000 WI 59, ¶11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727. Regardless, the court used the term to remain consistent with its past practice. Id. This court later clarified that "waiver" and "forfeiture" are two distinct concepts. State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612. "[W]aiver is the intentional relinquishment or abandonment of a known right"; "forfeiture is the failure to make the timely assertion of a right[.]" Id. (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).

7

27, 31, 273 Wis. 2d 76, 681 N.W.2d 190 (holding that the defendant forfeited an objection to the circuit court's competency by failing to object in the circuit court); Huebner, 235 Wis. 2d 486, ¶¶8, 10, 36 (concluding the defendant forfeited his right to a 12-person jury because he failed to object to the use of a 6-person jury at trial). In other cases, we forego applying forfeiture when a party fails to object, and instead reach the substantive merits. See, e.g., State v. Wilson, 2017 WI 63, ¶51 n.7, 376 Wis. 2d 92, 896 N.W.2d 682 (not applying forfeiture even though the defendant failed to object to a circuit court ruling, because the "important" issue on appeal was already briefed and argued); State v. McKellips, 2016 WI 51, ¶47, 369 Wis. 2d 437, 881 N.W.2d 258 (reaching the merits of whether a jury instruction was misleading even though the defendant forfeited the claim by failing to object); Ndina, 315 Wis. 2d 653, ¶38 (reaching the merits even though the defendant did not assert his public trial right and failed to object when the circuit court excluded family members from the courtroom because the State also forfeited an issue and the parties already briefed the underlying legal issues).

¶63 The court of appeals is similarly inconsistent in applying forfeiture. In some cases, the court of appeals held a failure to object in the circuit court results in forfeiture. See, e.g., State v. Benson, 2012 WI App 101, ¶¶5, 7, 16-17, 344 Wis. 2d 126, 822 N.W.2d 484 (holding that a defendant who submitted a report with inaccurate information at sentencing forfeited a due process claim by failing to object to the report, limiting the court of appeals' review to ineffective assistance of

counsel); State v. Saunders, 2011 WI App 156, ¶¶1, 28-32, 338 Wis. 2d 160, 807 N.W.2d 679 (applying forfeiture because the defendant failed to bring a sleeping juror to the circuit court's attention until after the trial). Like this court, the court of appeals has also reached the merits instead of applying forfeiture, even when the defendant failed to object in the circuit court. See, e.g., Dalka v. Am. Family Mut. Ins. Co., 2011 WI App 90, ¶¶5-6, 334 Wis. 2d 686, 799 N.W.2d 923 (holding Dalka forfeited his right to appellate review by not preserving the appealed issue in the circuit court, but deciding the appeal anyway because it was already briefed and involved a question of law); State v. Leitner, 2001 WI App 172, ¶¶41-42, 247 Wis. 2d 195, 633 N.W.2d 207 (holding that the defendant "waived" his claim by not objecting to the court's consideration of certain behavior at sentencing, but ignoring the "waiver") aff'd, 2002 WI 77, 253 Wis. 2d 449, 646 N.W.2d 341.[5]

---

[5] See also State v. Greenup, No. 2018AP709-CR, unpublished slip op., ¶¶9-11, 15-17 (Wis. Ct. App. Apr. 4, 2019) (applying forfeiture to the defendant's due process claim because objection based on the audibility of video evidence was insufficient; court addressed under ineffective assistance of counsel analysis); State v. Murphy, No. 2017AP1559-CR, unpublished slip op., ¶¶2, 11, 14, 58-66 (Wis. Ct. App. Aug. 16, 2018) (applying forfeiture when the defendant failed to object to the testimony of a witness); State v. DeAngeles, No. 2015AP348-CR, unpublished order (Wis. Ct. App. Apr. 26, 2016) (applying forfeiture when the defendant failed to raise new grounds for plea withdrawal in the circuit court); State v. Jackson, No. 2015AP934-CR, unpublished order (Wis. Ct. App. Dec. 8, 2015) (applying forfeiture when the defendant failed to raise objections to information included in the presentence investigation report at the sentencing); State v. Wojczak, No. 2010AP3138-CR, unpublished slip op., ¶19 (Wis. Ct. App. Feb. 2, 2012) (not applying forfeiture when the defendant did not alert the sentencing court to circumstances surrounding a material pregnancy, because nothing indicated the defendant or his attorney

¶64 The bench and bar would benefit from a clear rule, consistently applied, regarding what factors trigger forfeiture versus what warrants application of an exception to the general rule. "[J]udicial discretion . . . [leads to] a loss of predictability and the ability of citizens and litigants to know what the law proscribes. It can be antithetical to the rule of law and accountability particularly in the absence of a higher review of the discretion." Weigand, supra ¶61, at 245. The majority seemingly recognizes that the application of forfeiture is subject to the will rather than the judgment of each appellate court. The majority says, "[t]he forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case." Majority op., ¶27 (citation omitted). Our cases never identify what an "appropriate case" looks like, except on an ad hoc basis. Inconsistent exercise of this discretion produces adverse consequences, as recognized in other jurisdictions and by legal scholars:

> [An exception to the general rule of forfeiture] has never developed into a principled test, but has remained essentially a vehicle for reversal when the predilections of a majority of an appellate court are offended. . . . The other major weakness of [the exception] is its ad hoc nature. The [exception] has been formulated in terms of what a particular majority of an appellate court considers basic or fundamental. Such a test is unworkable when neither the [exception]

was aware of the pregnancy's significance at the time of sentencing). I cite these cases not in support of their legal propositions, but instead as further illustrations of the inconsistency in applying our forfeiture jurisprudence.

10

itself nor the case law applying it develop a predictable, neutrally-applied standard.

Dilliplaine v. Lehigh Valley Trust Co., 322 A.2d 114, 116-17 (1974) (emphasis added; internal footnotes omitted).

¶65 While "no general principle [of law] can achieve a perfect fit[,]" establishing general rules is preferable to the sort of discretionary, ad hoc approaches reflected in our forfeiture jurisprudence, which yield inequality of treatment and unpredictability in the law. See Antonin Scalia, The Rule of Law as a Law of Rules, 56 Univ. Chi. L. Rev. 1175, 1177-80, 1183 (1989) (emphasis omitted); see also Martineau, supra ¶60, at 1057-58 ("Inconsistency is the hallmark of the various exceptions. For every case that can be found in which an exception to the general rule [of forfeiture] is allowed, another exists in which the court refused to permit the exception and enforced the general rule. . . . This is ad hoc decision making at its worst."); Weigand, supra ¶61, at 181 (discussing discretion in applying forfeiture leading to "uncertainty and unevenness in application"). This court's forfeiture jurisprudence promotes decision-making devoid of discernable principles, at the expense of the rule of law:

> Making adherence to the general rule [of raising issues in the trial court] a matter of discretion in the appellate court has resulted in the effective abolition of the general rule. The general rule has been replaced by a system in which the question . . . is decided solely on the basis of whether a majority of the court considers the new issue necessary to decide the case in accordance with their view of the relative equities of the parties. The only consistent feature of the current system is inconsistency. If courts are free to disregard the general rule whenever they wish to do so, in effect there is no general rule. The current situation is

11

> destructive of the adversary system, causes substantial harm to the interests that the general rule is designed to protect, and is an open invitation to the appellate judges to "do justice" on ad hoc rather than principled bases.

Martineau, supra ¶60, at 1061.

¶66 In arguing whether forfeiture should apply, neither party in this case advocated for a fine tuning of our forfeiture jurisprudence, much less suggested an alternative to our current ad hoc approach to the doctrine. It is a rule of judicial administration that would benefit from greater clarity and predictability in its application. Because this court would benefit from full adversarial briefing regarding the doctrine, which is unnecessary to decide this case, the issue is better left to be explored in a case that squarely presents it.

### III. NEW FORFEITURE EXCEPTION IN SENTENCING

¶67 As the majority points out, this court previously decided that sentencing courts may consider the "distribution of sentences in cases similar to the case before it." Majority op., ¶¶43-44 (quoting State v. Gallion, 2004 WI 42, ¶47, 270 Wis. 2d 535, 678 N.W.2d 197). That is precisely what the sentencing court did in this case. Nevertheless, the majority perceives a need to create a new rule: "where previously unknown information is raised by the circuit court at the sentencing hearing, a defendant does not forfeit a direct challenge to the use of the information by failing to object at the sentencing hearing." Majority Op., ¶¶4, 37, 52.

¶68 Adopting the majority's new rule is unnecessary because, as the majority recognizes, accessing the circuit court's

12

institutional memory is entirely permissible during sentencing. Furthermore, such information is not "unknown"; as defense counsel testified during the Machner hearing, sentencing courts "do that all the time." If, as explained in Gallion, the sentencing court "may . . . consider information about the distribution of sentences in cases similar to the case before it[,]"[6] then the sentencing court's consideration of such information in this case could not be objectionable. If there was no basis for Counihan to object to this information, then why is the majority deciding whether Counihan forfeited her challenge to the sentencing court's consideration of information we have long recognized to be a permissible factor in sentencing? The legal issues in this case are not novel at all, yet the majority nevertheless devises a new rule. Why?

¶69 If the majority's approach to this case constituted an unnecessary, but harmless vetting of the substantive issues presented, I might have joined without writing separately. To the contrary, the majority's new rule will only encourage meritless postconviction motions based on allegedly (but not really) "previously unknown information raised by the circuit court at sentencing." A defendant's due process rights at sentencing protect against the sentencing court's reliance on inaccurate information. State v. Tiepelman, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. This case does not involve an allegation of inaccurate information; rather, it involves information being used

---

[6] State v. Gallion, 2004 WI 42, ¶47, 270 Wis. 2d 535, 678 N.W.2d 197.

at sentencing that was not only available to the defense before sentencing, but also constitutes the type of information <u>Gallion</u> instructed long ago is fairly considered by sentencing courts.

## IV. CONCLUSION

¶70 Our forfeiture jurisprudence suffers from inconsistency leading to unpredictability in applying the general rule, which has largely been swallowed by exceptions.[7] In some cases, our appellate courts apply the general rule of forfeiture if a party fails to object in a proceeding below. In other cases, we ignore forfeiture, with scant explanation. Wisconsin's "discretionary conferring approach" to forfeiture renders it "very difficult to predict with any certainty when an issue will be deemed [forfeited] or not[.]" Weigand, <u>supra</u> ¶61, at 245. The bench and bar would benefit from clear guidance regarding when forfeiture will apply as well as identifiable bases for instead invoking one of its exceptions.

¶71 The majority fashions a broad, categorical rule against forfeiture, which is unnecessary to properly dispose of this case. The majority should have denied Counihan's claims under the rubric of ineffective assistance of counsel. Counihan's counsel had an objectively reasonable basis for declining to object to the sentencing court's consideration of sentences imposed in similar cases preceding Counihan's. Additionally, we have long recognized

---

[7] This could be attributable in part to a variety of factors, including the specific arguments parties present in individual cases as well as differences between civil and criminal cases. Criminal cases, of course, provide review of ineffective assistance claims, whereas civil cases do not.

14

the permissibility, if not desirability, of a sentencing court accessing its institutional memory in order to ensure consistency in sentencing across cases. Because the majority unnecessarily resolved this case on the merits and in the process established a new rule fraught with adverse impact in its application, I respectfully concur.

¶72 I am authorized to state that Justice DANIEL KELLY joins this concurrence.