**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**May 3, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1338**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020ME1071

**IN COURT OF APPEALS**
**DISTRICT I**

IN THE MATTER OF THE MENTAL COMMITMENT OF A.J.G.:

MILWAUKEE COUNTY,

            PETITIONER-RESPONDENT,

      V.

A.J.G.,

            RESPONDENT-APPELLANT.

            APPEAL from an order of the circuit court for Milwaukee County:
PAUL R. VAN GRUNSVEN, Judge. *Reversed.*

¶1      DONALD, P.J.[1] Adam appeals from an order for involuntary commitment under WIS. STAT. § 51.20.[2] Adam contends that the order should be vacated because the circuit court failed to specify which standard of dangerousness under § 51.20(1)(a)2. it believed applied. As discussed below, we agree, and reverse.

## BACKGROUND

¶2      The relevant facts in this case are undisputed. On November 10, 2020, Milwaukee County filed a Statement of Emergency Detention. On November 12, 2020, a court commissioner found probable cause to believe that Adam was mentally ill, a proper subject for treatment, and dangerous to himself or others.

¶3      A final hearing was held on November 25, 2020. At the hearing, the County called two witnesses: Eliziannah Weary, a caregiver at the group home where Adam was a resident, and Clinical Psychologist Dr. Sonya Trueblood.

¶4      The circuit court found that on November 9, 2020, Adam "began masturbating" and "was told to go to [his] room and then he went off." The court

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

Adam's notice of appeal also referenced an involuntary medication order that was entered by a court commissioner five days after the commitment order was entered. That medication order, which extends through the period of commitment, cannot be directly appealed because it was not entered by a circuit court judge. *See Dane Cnty. v. C.M.B.*, 165 Wis. 2d 703, 709, 478 N.W.2d 385 (1992) (holding that a court commissioner's order is not equivalent to a circuit court's order and "cannot be appealed directly to the court of appeals").

stated that Adam "engaged in a forceful and violent confrontation with [Ms. Weary] who was the lone attendee at this [sic]." Adam punched Ms. Weary in the face and pulled her hair. Ms. Weary called her supervisor and the police. Adam "was then talking to the police and then engaged in a fight with the police."

¶5      The circuit court found that Adam was mentally ill and a proper subject for treatment. In regards to dangerousness, the court simply stated that "[t]here is dangerousness all over the place." In addition, after stating the facts, the court stated that "[i]f that's not dangerousness, I don't know what is."

¶6      The circuit court concluded its remarks by stating that the County "has easily met its burden by clear and convincing evidence that [Adam] is a substantial harm to himself or others." The circuit court issued an order committing Adam for six months. Adam appeals. Additional relevant facts are referenced below.

## DISCUSSION

¶7      On appeal, Adam contends that the circuit court failed to specify which of the five standards of dangerousness it believed applied in this case and, therefore, his commitment order should be vacated. We agree.

¶8      Review of a commitment order presents a mixed question of law and fact. We uphold a trial court's findings of fact unless they are clearly erroneous, but whether those facts satisfy the statutory standard is a question of law that we review *de novo*. ***Marathon Cnty. v. D.K.***, 2020 WI 8, ¶18, 390 Wis. 2d 50, 937 N.W.2d 901.

¶9      In order to commit an individual, the County has the burden to prove by clear and convincing evidence that an individual is: (1) mentally ill; (2) a

proper subject for treatment; and (3) dangerous to themselves or others. WIS. STAT. § 51.20(1) & (13)(e); *Waukesha Cnty. v. J.W.J.*, 2017 WI 57, ¶18, 375 Wis. 2d 542, 895 N.W.2d 783.

¶10    WISCONSIN STAT. § 51.20(1)(a)2. identifies five different standards of dangerousness. The statute provides that an individual is dangerous because he or she does any of the following:

> a. Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.
>
> b. Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm….
>
> c. Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals….
>
> d. Evidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness….
>
> e. For an individual, other than an individual who is alleged to be drug dependent or developmentally disabled, after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to

whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions[.]

¶11    In *Langlade Cnty. v. D.J.W.*, our supreme court unequivocally stated that "circuit courts in recommitment proceedings *are to make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2.* on which the recommitment is based." *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶40, 391 Wis. 2d 231, 941 N.W.2d 277 (emphasis added). *D.J.W.* explained that this requirement "provides clarity and extra protection to patients," and "will clarify issues raised on appeal … and ensure the soundness of judicial decision making." *Id.*, ¶¶42-44.

¶12    In this case, it is undisputed that the circuit court did not state which subdivision of WIS. STAT. § 51.20(1)(a)2. that it was basing its ruling on. Moreover, the court's decision did not track the necessary elements of any particular subdivision and explain how the evidence satisfied each of the elements. This is a clear violation of *D.J.W.*

¶13    The County first argues that *D.J.W.*'s mandate only applies to recommitments, not original commitments, like this case. We disagree. As stated above, *D.J.W.*'s requirement that circuit courts make specific factual findings with reference to a specific subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. was intended to provide clarity and protection to individuals and eliminate guesswork. *See D.J.W.*, 391 Wis. 2d 231, ¶¶42-45. Certainly such reasoning is equally

important in an original commitment. As our supreme court has stated in the context of an original commitment, "civil commitment cases are to be handled with the utmost diligence and care." *D.K.*, 390 Wis. 2d 50, ¶26. Accordingly, we are not persuaded that an individual in an original commitment is entitled to any less protection or clarity than an individual in a recommitment proceeding.[3]

¶14     The County also argues that the circuit court's statements were sufficient. In support, the County notes that it argued for the second standard of dangerousness, and the circuit court, in its remarks, referenced several instances of physical violence to others and stated that there was evidence that Adam is "a substantial harm to himself or others."

¶15     To start, none of the five standards of dangerousness use the phrase "a substantial harm." The first standard and the second standard refer to "a substantial probability of physical harm." WIS. STAT. § 51.20(1)(a)2.a. & b. The third standard refers to "a substantial probability of physical impairment or injury." Sec. 51.20(1)(a)2.c.

¶16     In addition, the second standard does not contain a reference to an individual's dangerousness "to himself." The second standard requires "a substantial probability of physical harm to other individuals[.]" WIS. STAT.

---

[3] We note that a number of other opinions have also indicated that *D.J.W.*'s mandate applies to original commitments—*Winnebago Cnty. v. A.A.L.*, No. 2020AP1511, unpublished slip op. ¶17 n.8 (WI App Mar. 24, 2021); *Shawano Cnty. v. S.L.V.*, No. 2021AP223, unpublished slip op. ¶16 (WI App Aug. 17, 2021); *Outagamie Cnty. DHSS v. M.D.H.*, No. 2020AP86, unpublished slip op. ¶7 n.4 (WI App July 13, 2021); *Trempealeau Cnty. v. B.K.*, No. 2020AP1166, unpublished slip op. ¶17 n.3 (WI App July 27, 2021); *Outagamie Cnty. v. D.G.M.*, No. 2020AP967, unpublished slip op. ¶18 n.5 (WI App Sept. 21, 2021). *See* WIS. STAT. § 809.23(3)(b) (permitting the citation of unpublished, authored opinions issued after July 1, 2009, for their persuasive value).

§ 51.20(1)(a)2.b. In comparison, the third standard requires "a substantial probability of physical impairment or injury to himself or herself or other individuals." Sec. 51.20(1)(a)2.c.

¶17 Accordingly, contrary to the County's suggestion, it is not clear whether the circuit court was referring to the second standard, a different standard, or changing the standard. This is precisely the type of "guesswork" that ***D.J.W.*** sought to avoid. *See id.,* 391 Wis. 2d 231, ¶45.[4] These hearings cannot be perfunctory and attention to detail is important. *See generally*, ***Outagamie Cnty. v. Melanie L.***, 2013 WI 67, ¶¶9, 91, 349 Wis. 2d 148, 833 N.W.2d 607 (stating that medical experts' testimony should track the statutory standard to avoid speculation in a challenge to an involuntary medical order).

¶18 We therefore reverse Adam's commitment order outright.[5]

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] The County also argues that Adam forfeited his argument by failing to raise it in the circuit court. Even if Adam's argument was forfeited—and we emphasize we are not making that finding here—the forfeiture rule is a rule of judicial administration. *See* ***State v. Counihan***, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530. Thus, a reviewing court may disregard forfeiture and address the merits of an unpreserved issue. ***Id.*** Given the liberty interests at stake and the fact that this case involves a legal challenge applied to undisputed facts, we decline to apply the rule of forfeiture here.

[5] The County does not address Adam's proposed remedy. We treat the County's failure to respond as a concession and therefore, outright reverse the order as Adam requests. *See* ***Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.***, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).