COURT OF APPEALS
DECISION
DATED AND FILED

January 26, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1629-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF232

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ROBERT R. UNDERWOOD,

   RESPONDENT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Affirmed*.

Before Blanchard, P.J., Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM. Robert R. Underwood appeals a judgment of conviction for knowingly operating while suspended, causing death, and

knowingly operating while suspended, causing great bodily harm. Underwood argues that the evidence at his trial to the court was insufficient to prove the element of Underwood's knowledge, at the time of the offenses, that his operating privilege had been suspended.

¶2    Underwood also appeals the circuit court order denying his postconviction motion for sentence modification. He argues that he is entitled to sentence modification based on newly presented evidence as to the sentences imposed in purportedly similar cases.

¶3    For the reasons set forth below, we reject Underwood's arguments. We affirm.

## BACKGROUND

¶4    The State charged Underwood with felony offenses of knowingly operating a motor vehicle while suspended, causing death, and knowingly operating a motor vehicle while suspended, causing great bodily harm, both as a repeater, based on an automobile crash that occurred on September 17, 2017. At Underwood's trial to the court, the only element in dispute was whether Underwood knew, at the time of the offenses, that his operating privilege had been suspended.

¶5    The State presented the following evidence at trial. A police officer testified that he issued a speeding citation to Underwood on March 29, 2017, for driving twenty-five miles per hour over the speed limit. The officer testified that the citation informed Underwood that if he failed to contest the citation or pay the fine, his operating privilege may be suspended. The officer also testified that it would have been his usual practice to include, with the citation, a court pamphlet

that stated that a conviction for driving twenty-five miles per hour or more over the speed limit required suspension of operating privileges.

¶6 The circuit court deputy clerk of the traffic forfeiture division testified that Underwood failed to appear for his court date on the citation and a default judgment was entered by the court on May 11, 2017. The default judgment, which was entered into evidence, states that the penalty for the conviction was thirty days of license suspension and a fine. It also ordered that, if Underwood failed to pay the fine, his operating privilege would be suspended for no less than thirty days and no more than two years. The court mailed the default judgment to Underwood at the address it had in its system for Underwood, in Butler, Wisconsin (the "Butler address"). Court records did not indicate that the mailing was returned. Notice of Underwood's conviction was transmitted electronically by the court to the Department of Transportation (DOT).

¶7 The clerk testified that Underwood failed to pay the fine as required under the default judgment and, on August 28, 2017, the circuit court issued an order suspending Underwood's operating privilege for two years. The court electronically transmitted that order to the Department of Motor Vehicles (DMV) for it to process. The clerk testified that the court did not mail that order to Underwood, but further testified to the clerk's understanding that, when such orders are transmitted to the DMV, the DMV then notifies the defendants by mail.

¶8 An officer who investigated the September 2017 crash testified that Underwood's certified driving records from the DMV indicated that the DMV mailed notice of the suspension for the speeding conviction to Underwood at the Butler address on May 12, 2017, and mailed notice of the suspension for failure to pay the fine to Underwood at an address in Horicon, Wisconsin (the "Horicon

address") on August 29, 2017. The officer testified that, according to certified records from DOT, Underwood registered a vehicle in his own name on July 16, 2017, and submitted the Horicon address as his address at that time. The officer testified that Underwood's license remained suspended on the date of the crash, September 17, 2017.

¶9 Underwood testified as follows in his own defense. Underwood was living with his girlfriend, Tracy Verbeten, in Juneau, Wisconsin, when he received the traffic citation in May 2017. The Butler address was Underwood's mother's residence, and Underwood used that address to receive business mail, although he experienced some difficulty receiving his mail there. Underwood used the Horicon address to register a vehicle he purchased for his brother-in-law but never intended DOT to use that as his mailing address. He never received the default judgment mailed to the Butler address, and he never received any mail at the Horicon address. Underwood knew that, if he failed to pay his speeding citation, his license would be suspended. However, he did not know that his license was suspended at the time of the September 2017 crash. He first learned that his license had been suspended when he met with an officer at the impound lot about a week after the crash.

¶10 Underwood's mother testified that she resides at the Butler address, and that Underwood uses that address as his mailing address, although he was not residing there at the time of the crash. She testified that she would give Underwood's mail to Underwood's ex-brother-in-law, Eric, who lived in the upstairs apartment at the Butler address, to give in turn to Verbeten and from her to Underwood. However, when Eric moved out, Underwood's mother found two bags of Underwood's mail among Eric's belongings. Underwood's mother also

4

testified that she had experienced trouble receiving mail at her residence for the past five years.

¶11     Verbeten testified that she lives in Juneau, Wisconsin, and that Underwood moved in with her in 2016. Underwood received mail at their residence. Verbeten owned the Horicon property, and no one was living there in 2017 because it was not habitable. To her knowledge, Underwood never received mail at that address. Verbeten was not aware until after the crash in 2017 that Underwood's license had been suspended.

¶12     The circuit court determined that Underwood knew at the time of the crash that his license was suspended. The court found that the testimony by Underwood's mother and Verbeten was credible, but the testimony by Underwood that he did not receive the mailings from the court and the DMV was not credible.

¶13     The circuit court found Underwood guilty and imposed a sentence of seven years of initial confinement and three years of extended supervision for knowingly operating while suspended, causing death, and a consecutive sentence of three years of initial confinement and two years of extended supervision for knowingly operating while suspended, causing great bodily harm. The court explained that it considered the offenses "on the top side of seriousness for this type of offense."

¶14     Underwood moved for sentence modification based on the new factor that allegedly similarly situated defendants had received significantly lesser sentences. He argued that the evidence indicated that, contrary to the circuit court's sentencing comments, Underwood's offenses were not on the "top side" of serious. The court determined that Underwood had not established a new factor, and denied the motion for sentence modification.

*I. Sufficiency of the Evidence*

¶15     We will reverse for insufficient evidence only if "the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." **State v. Poellinger**, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).  We review the sufficiency of the evidence under the same standard whether the evidence against the defendant was direct or circumstantial. *Id.* at 501.  We review de novo whether the evidence at trial was sufficient to support a conviction beyond a reasonable doubt.  *See* **State v. Booker**, 2006 WI 79, ¶12, 292 Wis. 2d 43, 717 N.W.2d 676.

¶16     In order to convict Underwood of operating while suspended, causing great bodily harm or death, the State was required to prove the following elements: (1) Underwood operated a motor vehicle on a highway; (2) Underwood's operating privilege was suspended at the time he operated the motor vehicle; (3) Underwood knew that his operating privilege had been suspended; and (4) Underwood's operation of the vehicle caused great bodily harm or death to the victim. *See* WIS JI—CRIMINAL 2623A.  The only element in dispute at Underwood's trial was the third element:  whether Underwood knew, at the time of the offenses, that his operating privilege had been suspended.

¶17     Underwood asserts that, to prove that Underwood knew that his operating privilege had been suspended, the State was required to prove that Underwood had actual knowledge of the suspension.  *See* WIS. STAT.

§ 343.44(1)(a), (2)(ag)2.-3. (2015-16)[1] (elements of knowingly operating while suspended, causing great bodily harm or death, include that the person "*knows* at the time of the violation that [the person's] operating privilege *has been* suspended" (emphasis added)). Underwood points out that, under a prior version of the operating while suspended statute, the State had to prove only that "the defendant had cause to believe their license might be revoked or suspended." *See State v. Kemp*, 106 Wis. 2d 697, 706, 318 N.W.2d 13 (1982). Underwood asserts that the statute has now been amended to create separate felony offenses of *knowingly* operating a motor vehicle, causing great bodily harm or death, which include the element of actual knowledge. *See* 2011 Wis. Act 113.

¶18 Underwood argues that the jury instructions make clear that proving actual knowledge is different than proving a defendant had "cause to believe" his license was suspended. He cites WIS JI—CRIMINAL 2623A, which instructs that the State "must prove beyond a reasonable doubt that the defendant knew [that the defendant's] operating privileges had been suspended regardless of whether the defendant received written notice of suspension." He also cites a jury instruction committee note explaining that "[t]his may be accomplished by showing any source of actual knowledge, such as a notice given by a judge, receipt of a mailed notice, etc." *Id.*, n.9. He contends that the State failed to meet that burden here.

¶19 Underwood argues that the State's evidence was insufficient to establish actual knowledge because it presented no direct evidence that Underwood *received* the default judgment or the notices of suspension that were

---

[1] All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

mailed to addresses where he did not reside. He contends that the information provided in the citation and pamphlet did not inform him that his license *had* been suspended, only that it was possible, or even likely, to occur in the future if he was ultimately convicted and failed to pay the fine. He contends that the same is true of his admission that he understood that failure to pay a fine would lead to suspension of his license, because that admission did not prove that he knew his license *had been* suspended at the time of the offenses.

¶20 The State argues that the evidence was sufficient to support the circuit court's finding that Underwood received actual notice that his operating privilege had been suspended. It argues, first, that the speeding citation and court pamphlet provided Underwood with notice that his operating privilege would be suspended. It argues that Underwood's admission that he knew that his license would be suspended if he failed to pay the fine established his actual knowledge that his license was suspended when he subsequently failed to pay the fine, a failure that is not disputed. Finally, it argues that the court was entitled to draw the reasonable inference that Underwood received the default judgment and DMV suspension notices mailed to him at the Butler and Horicon addresses. It contends that failure to receive a properly mailed notice is not a defense to operating with a suspended license under WIS. STAT. § 343.44(3).

¶21 In reply, Underwood contends that the State has not cited any trial evidence from which a rational fact-finder could have found beyond a reasonable doubt that Underwood knew at the time of the crash that his license was suspended. He argues that the State has cited evidence to support the previous "cause to believe" standard, not the current standard of actual knowledge. He points out that the State has cited no evidence of an admission by Underwood that he knew his license had been suspended, no evidence that an officer ever told

Underwood that his license had been suspended, and no evidence that any notice was mailed to Underwood's place of residence.

¶22    Underwood also cites *State v. Giegler*, No. 2021AP952-CR, unpublished slip op. (WI App Nov. 2, 2021), as persuasive authority that the State's proof of actual knowledge was insufficient.  Giegler was convicted of knowingly violating a domestic abuse temporary restraining order (TRO), and challenged the sufficiency of the evidence to establish that he had actual knowledge of the TRO and its terms.  *Id.*  The State's evidence at trial included: (1) testimony by a police officer that he observed Giegler at the victim's residence, and that he confirmed that a TRO was in place that had been served; and (2) testimony by another officer that the general process for serving a TRO was personal service by an officer, and that he was informed by dispatch that there was a TRO in place and that Giegler had been served.  *Id.*, ¶¶4, 5.

¶23    We held that the State's evidence was insufficient as a matter of law to prove Giegler's knowledge of the TRO.  *Id.*, ¶¶14-15.  We explained that, although the trier of fact could draw reasonable inferences from the evidence, "[a]n 'inference cannot be based upon speculation or conjecture,'" *id.*, ¶10 (quoted source omitted).  We noted that the only evidence the State produced to prove knowledge was the officers' testimony that they were informed that Giegler had been served, and that the trial evidence lacked any evidence to prove service.  *Id.*, ¶¶14-15.  We therefore concluded that, "[a]t best, the jury may have speculated that Giegler knew about the restraining order."  *Id.*

¶24    Underwood argues that here, as in *Giegler*, the State's evidence was insufficient to establish actual knowledge because the State failed to present a witness involved in conveying notice, and any inference of notice had to be based

on speculation. He contends that the State presented no testimony as to whether the DMV's August 2017 notice of suspension, which it mailed to the Horicon address, was returned as undeliverable. He asserts that the State could have presented testimony by a DMV employee or another person with personal knowledge as to how the DMV handles returned or undeliverable mail, or other evidence to establish that Underwood received mail at the Horicon address. He also argues that a fact-finder would have to speculate that the mail that Underwood's mother testified that she found undelivered to Underwood (testimony the court found credible) did not include the default judgment and DMV notice mailed to the Butler address.

¶25 Underwood also argues that the State's argument that failure to receive a properly mailed notice is not a defense is misplaced. He asserts that WIS. STAT. § 343.44(3) would apply if the State had charged Underwood with operating with a suspended license, causing death or great bodily harm, under § 343.44(1)(a) and (2)(ag)2. and 3. *See* § 343.44(3) ("[F]ailure to receive an order of revocation, suspension or disqualification mailed by 1st class mail to such person's last-known address shall not be a defense to the charge of driving after revocation, suspension or disqualification."). Here, Underwood points out, the State charged Underwood with *knowingly* operating a motor vehicle while suspended, causing death or great bodily harm. *See* § 343.44(ag)2., 3. Thus, Underwood points out, the State had the burden to prove actual knowledge.

¶26 At the outset, we agree with Underwood that resolution of this issue turns on whether the evidence at trial was sufficient to support a finding that Underwood received notice that his operating privilege *had* been suspended, not whether he knew that that was merely a potential or even likely consequence of the speeding citation. That is, as Underwood points out, evidence that Underwood

10

knew that his license *would* be suspended does not establish that Underwood knew that his license *had been* suspended at the time of the offenses. *Compare* WIS. STAT. § 343.44(1)(a), (ag)2., & 3. (elements of knowingly operating, causing great bodily harm or death, include that "the person *knows* at the time of the violation that his or her operating privilege *has been suspended*" (emphasis added)), with *Kemp*, 106 Wis. 2d at 706 (then-current version of operating while suspended statute required showing that "the defendant had cause to believe their license might be revoked or suspended"). Accordingly, our discussion focuses on whether the evidence at trial was sufficient to support a finding that Underwood received the default judgment and DMV notices mailed to the Butler and Horicon addresses.

¶27 We conclude that the evidence at trial was sufficient to support the convictions because it allowed a reasonable inference that Underwood had received notice that his license was suspended at the time of the September 2017 offenses. The State introduced testimony and certified DMV records to establish that the default judgment and the first notice of suspension were mailed to Underwood at the Butler address, and the second notice of suspension was mailed to Underwood at the Horicon address. The State introduced testimony that Underwood received mail at the Butler address. It also introduced testimony that certified DOT records showed that Underwood used the Horicon address when he registered a vehicle with the DMV several months after he received the speeding citation and about a month before the DMV mailed the notice of the two-year suspension. While Underwood points to reasons that the circuit court could have found that Underwood did not receive the default judgment or the notices of suspension, he has not shown that the court was required to make that finding. Rather, the court, as the fact-finder, was entitled to draw the reasonable inference

from the evidence that notices were sent to addresses where Underwood received mail, and the further reasonable inference that Underwood actually received the notices that his license had been suspended.

¶28   We are not persuaded that the analysis in *Giegler* supports a different result.   In *Giegler*, the trial evidence did not include evidence that Giegler received notice of the TRO.   Here, by contrast, there was evidence that the circuit court mailed the default judgment to the Butler address, and that the DMV mailed notices of suspension to the Butler and Horicon addresses.   As explained, the court was entitled to draw the inference that Underwood received mail at those addresses, and the court found that Underwood's testimony that he did not receive that mail was not credible.   Thus, unlike *Giegler*, the trial evidence included evidence that allowed a reasonable inference of actual notice.

¶29   We agree with Underwood that WIS. STAT. § 343.44(3) does not apply in this case because the State chose to charge Underwood with *knowingly* operating a motor vehicle while suspended, causing great bodily injury or death. Thus, as Underwood points out, the State had the burden to prove actual knowledge, such as by proving Underwood received the notices mailed to him. However, as explained, we conclude that the evidence was sufficient to support a reasonable inference that Underwood received the default judgment and DMV notices of suspension that were mailed to one address that he used to receive mail and a second address that he had recently provided to the DOT.   Accordingly, we are not persuaded that the evidence at trial was insufficient.

*II. Sentence Modification*

¶30   A new factor is "'a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original

sentencing, either because it was not then in existence or because … it was unknowingly overlooked by all of the parties.'" *See **State v. Harbor***, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (quoted source omitted). A defendant seeking sentence modification based on a new factor must: (1) demonstrate by clear and convincing evidence that a new factor exists; and (2) show that the new factor justifies sentence modification. *See **id.***, ¶¶36-38. The court may consider either prong first, and if a defendant fails to satisfy one prong, the court need not address the other. *See **id.***, ¶38. Whether a fact or set of facts constitutes a new factor is a question of law that this court considers de novo. *See **id.***, ¶33. Whether a new factor warrants sentence modification is a matter within the circuit court's discretion. *See **id.***

¶31    With his postconviction motion, Underwood presented the circuit court with evidence regarding sentencings in other cases that he asserts are similar to this one and, based on those submissions, he argues that other defendants convicted of similar offenses have received lesser sentences, entitling Underwood to sentence modification. He points to the circuit court's comments at sentencing that, compared to other cases, the facts in Underwood's case were particularly aggravated. He then argues that evidence that other defendants convicted of the same offenses have received substantially lower sentences, despite some of the cases having more aggravated facts than this one, constitutes a new factor warranting sentence modification. He argues that the court erred by determining that the new information did not constitute a new factor, and that the matter should be remanded to the circuit court for a determination of whether the new factor warrants sentence modification.

¶32    Underwood cites the following information from his postconviction motion as establishing a new factor. Between April 14, 2000, and April 14, 2021,

thirty-nine defendants were convicted of knowingly operating after suspension, causing death. Fifteen of those defendants, like Underwood, were convicted only of knowingly operating while suspended offenses, and all but two of those fifteen defendants were placed on probation. The average length of initial confinement across all thirty-nine cases, excluding Underwood's, was 2.4 years. During the same time period, forty-two defendants were convicted of knowingly operating after suspension, causing great bodily harm. Seventeen of those defendants were convicted only of knowingly operating while suspended offenses, and none of those defendants received a prison sentence. Across all forty-two defendants, only eleven defendants received prison sentences, and the average length of initial confinement was 1.4 years. In some of those other cases, the driver was impaired, was driving recklessly, lied to police, or fled the scene.

¶33 Underwood contends that the information he presented to the circuit court showing disparities between his sentence and the sentences of other defendants convicted of the same offenses, including the aggravated facts in some of those cases that are not present in Underwood's case, was a new factor warranting sentence modification. He contends that the information was unknowingly overlooked by all of the parties because no one mentioned that information at sentencing, and in fact comments by counsel and the court indicated that the court believed that a charge of knowingly operating while suspended, causing great bodily harm or death, without an accompanying impaired driving charge, was unusual. Underwood contends that the information is also highly relevant to his sentencing because a circuit court may consider sentences received by similarly situated defendants when imposing sentence. *See State v. Gallion*, 2004 WI 42, ¶47, 270 Wis. 2d 535, 678 N.W.2d 197 (sentencing court "may … consider information about the distribution of sentences in cases similar

to the case before it"). Underwood points out that, in *State v. Counihan*, 2020 WI 12, ¶¶43-44, 390 Wis. 2d 172, 938 N.W.2d 530, the supreme court held that considering sentences in similar cases is "congruent with the general policy that 'consistency in criminal sentencing is desirable.'" (Quoted source omitted.)

¶34 Underwood contends that the circuit court's sentencing comments made clear that the severity of the offenses he committed was highly relevant to the sentence imposed, and that a comparison to the lower sentences received in more aggravated cases is therefore highly relevant to the sentence Underwood received. He argues that he has established a new factor, and that this matter should be remanded for the circuit court to determine whether the new factor warrants sentence modification.

¶35 The State responds that the circuit court properly denied Underwood's motion for sentence modification. It argues that there is no requirement that defendants convicted of similar crimes must receive similar sentences, and that each sentence must be individualized. *See State v. Lechner*, 217 Wis. 2d 392, 427, 576 N.W.2d 912 (1998). It argues that the sentences received by other defendants convicted of the same offenses are irrelevant to Underwood's sentence. It also contends that, even if other sentences could be considered, Underwood failed to provide sufficient information as to the details in the other cases to establish that any disparity between his case and the other cases would warrant sentence modification.

¶36 We conclude that Underwood failed to present a new factor for sentence modification purposes, and that the circuit court therefore properly denied the postconviction motion. Underwood compares his sentence to other defendants convicted solely of knowingly operating while suspended, causing

great bodily harm or death, and defendants convicted of knowingly operating while suspended, causing great bodily harm or death, plus impaired driving. He argues that the criminal complaints in some of those other cases show more aggravated facts, such as evidence that the defendant was impaired, drove recklessly, lied to police, or fled the scene, none of which are present in Underwood's case. However, Underwood makes no comparisons between the sentencing factors considered in his case versus the sentencing factors considered in the other cases. For example, the circuit court here considered Underwood's history of poor driving for which he would offer excuses; that Fentanyl was discovered in Underwood's system after the crash in this case; the impact of the crash on the victims' family; Underwood's "sketchy" employment history; and Underwood's significant criminal history, including that he was on probation at the time of these offenses. Underwood's postconviction motion did not present the circuit court with comparisons to the sentencings in the other cases sufficient to demonstrate whether similar factors were considered in any of those cases, much less a highly relevant pattern. Thus, Underwood has failed to establish that he was similarly situated to the other defendants who received lesser sentences such that he presented highly relevant facts that could constitute a new factor. Accordingly, the circuit court properly denied the motion for sentence modification.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2019-20).

16