COURT OF APPEALS
DECISION
DATED AND FILED

May 23, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2115-CR**

Cir. Ct. No. **2015CF1118**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFFREY KYLE WALKER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jeffrey Walker, pro se, appeals a judgment convicting him of three counts of first-degree sexual assault of a child under

thirteen years old, five counts of second-degree sexual assault of a child, and one count of child enticement. He also appeals an order denying his motion for postconviction relief. Walker argues that he received constitutionally ineffective assistance of counsel, that the State engaged in prosecutorial misconduct, that the evidence was insufficient to support his child enticement conviction, that the jury engaged in misconduct by failing to weigh the evidence, and that the circuit court erroneously decided several issues related to other-acts evidence. We reject all of his arguments and affirm.

## BACKGROUND

¶2      In August 2015, the State charged Walker with two counts of sexual assault and one count of child enticement. The criminal complaint described reports by two young boys, Mason and Spencer,[1] who separately told police how they each slept at Walker's home on different occasions and awoke to Walker sexually assaulting them. The complaint also described an incident on August 1, 2015, in which Walker purchased alcohol, drove himself and Mason to a motel, and checked into a room. While Walker was checking into the room, Mason fled to a friend's house out of fear that "something" was going to happen to him.

¶3      During the pretrial proceedings, the circuit court granted the State's motion to admit other-acts evidence of Walker sexually assaulting Mason in Kewaunee County. The court also granted the State's request to file an amended Information that charged a total of nine offenses. Counts 1 through 5 of that

---

[1] Consistent with the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we refer to the victims using pseudonyms. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Information were based on Walker's sexual assaults of Spencer in the spring of 2011; Counts 6 through 8 were based on Walker's sexual assaults of Mason in the summer of 2013; and Count 9 was based on Walker's enticement of Mason on or about August 1, 2015. Walker did not object to this amended Information.

¶4    At trial, Spencer was the State's first witness. Spencer testified that his father and Walker had been friends and that Walker would "hang out," play video games, and watch movies with Spencer. Spencer further testified that in the spring of 2011, when Spencer was either eleven or twelve years old, Walker invited him to go bowling and to spend the night with Walker. Spencer accepted Walker's invitation, and the two subsequently went bowling and then later watched movies together at Walker's mother's apartment. During the evening, Spencer drank two "tall cans" of beer that Walker had offered to him.

¶5    Later in the night, Spencer woke up to Walker touching Spencer's genitals. Spencer described being "in disbelief" and not "know[ing] what to do." Spencer further described how Walker made him "rub [Walker's] penis," how Walker performed oral sex on Spencer, how Walker made Spencer insert Spencer's penis into Walker's rectum, and how Walker inserted his penis into Spencer's rectum.

¶6    Spencer did not immediately report the sexual assaults because he feared that people would not believe him. In 2014, however, Spencer reported the assaults to his mother after she asked why he was "acting up" and receiving citations for drinking alcohol and possessing drugs. Spencer testified that he did not know or recognize Mason. On cross-examination, Spencer acknowledged that he initially reported that the sexual assaults had occurred in 2012 instead of 2011

and that a detective in this case had offered to help him with some of his outstanding citations.

¶7    Following Spencer's testimony, the State called Mason as the next witness. Mason testified that Walker was a family friend of one of Mason's friends and that Mason met Walker through that friend. Mason described how Walker took him and his friends swimming and how Walker bought him shoes, clothes and food. Mason testified that in the summer of 2013, when he was twelve years old, he spent the night at Walker's mother's home. Mason said that he and Walker watched television and that Mason drank a Mike's Hard Lemonade, which Walker had offered to him. After Mason had fallen asleep, he woke up to Walker unbuttoning and unzipping Mason's pants. Mason testified that Walker subsequently put his penis into Mason's rectum, performed oral sex on Mason, and then used Mason's hand to masturbate Walker's penis.

¶8    Mason further testified to a separate incident that occurred several months later. During that incident, Walker had taken both Mason and Mason's friend on a fishing trip, and the three of them stayed together in a motel in the City of Kewaunee. At the motel, Walker gave Mason a beer and told him to "chug it." Later in the night, after Mason had fallen asleep, he woke up to Walker picking him up and carrying him over to Walker's bed. Once there, Walker pulled Mason's pants down and put his penis in Mason's rectum.

¶9    Finally, Mason testified to the incident that occurred on August 1, 2015. Mason testified that Walker had stopped seeing him for "a while" but then spontaneously came over to Mason's home that day. Thereafter, Walker took Mason out for dinner and later stopped at a gas station to purchase alcohol. Mason testified that he started to grow concerned at this point "[b]ecause all the other

times [Walker] bought alcohol he raped [Mason]." Walker then took Mason back to Walker's mother's home where Walker started a bonfire and poured strawberry liquor into Mason's drink. Walker and his mother subsequently argued about Walker's boat in the yard, which prompted Walker to leave with Mason. Walker then drove Mason to a motel and attempted to check into a room, but the motel was full. Walker took Mason to a different motel and again went to check into a room.

¶10 While Walker was in the motel, Mason fled from Walker's vehicle and ran to a friend's house. Mason explained that he "didn't want the same thing to repeat over again." Once Mason reached his friend's home, he called his sister and asked her to come get him. Before Mason's sister arrived, however, Walker showed up at Mason's friend's home and asked "why did you fucking run from me," to which Mason responded: "[Y]ou know." Walker yelled at Mason to get in Walker's vehicle, but Mason refused. Walker subsequently gave Mason $20 for "working on [his] boat"—which Mason stated that he had not done—and demanded that he shake Walker's hand. When Mason finally got home, he told his mother about the prior sexual assaults. Mason testified that he did not know Spencer.

¶11 On cross-examination, Mason acknowledged that he initially told law enforcement that the fishing trip incident had occurred first, but he said that he made the mistake because "it was early morning" and he had not slept. Mason also agreed that Walker did not say anything about wanting to have sexual contact with Mason nor did he "try to have sexual contact with [him]" on August 1, 2015.

¶12 The State subsequently called several other witnesses to testify, including Spencer's mother, Mason's mother and sister, and a detective. The

5

defense called Walker's mother, who testified that she did not recall Mason ever spending the night at her home, nor did she recall observing any "abnormal interaction[s]" between Mason and Walker. Walker also testified in his own defense, denying that he ever had any sexual contact or sexual intercourse with either Spencer or Mason. Walker acknowledged that Spencer stayed at his mother's home once in the summer of 2011, but he denied that Mason had ever spent the night at his mother's home. Walker described trying "to be a positive role model" for the young boys.

¶13     At the end of the trial, the jury found Walker guilty on all nine counts. The circuit court later sentenced Walker to a total of twenty years' initial confinement followed by fifteen years' extended supervision. Walker subsequently filed a pro se postconviction motion, raising numerous claims. The court held a *Machner*[2] hearing on that motion, at which both Walker and his trial counsel testified.[3] The court concluded that Walker was not entitled to relief on any of his claims and denied the motion.

¶14     Walker now appeals. Additional facts will be provided as necessary below.

---

[2] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[3] For purposes of this opinion, "trial counsel" refers to the attorney who represented Walker at trial. Walker was represented by a number of other attorneys throughout the pretrial proceedings, but none of those attorneys testified at the *Machner* hearing.

**DISCUSSION**

**I. Ineffective assistance of counsel**

¶15 To prevail on an ineffective assistance of counsel claim, the defendant must prove: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. We need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

¶16 To establish deficient performance, a defendant must demonstrate that his or her trial counsel's performance fell below "an objective standard of reasonableness." *State v. Savage*, 2020 WI 93, ¶28, 395 Wis. 2d 1, 951 N.W.2d 838 (citation omitted). "Courts afford great deference to trial counsel's conduct, presuming that it 'falls within the wide range of reasonable professional assistance.'" *Id.* (citation omitted). Indeed, "counsel's performance need not be perfect, nor even very good, to be constitutionally adequate." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695.

¶17 To establish prejudice, "a defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Savage*, 395 Wis. 2d 1, ¶32 (citation omitted). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *Sholar*, 381 Wis. 2d 560, ¶44 (citation omitted).

¶18    Whether a defendant has been denied the effective assistance of counsel is a mixed question of law and fact. *Savage*, 395 Wis. 2d 1, ¶25. We will not overturn a circuit court's findings of fact unless they are clearly erroneous. *Id.* However, we review de novo whether counsel's conduct constitutes ineffective assistance. *Id.*

### A. Failure to pursue a speedy trial

¶19    Walker argues that one of his attorneys during pretrial proceedings provided ineffective assistance by coercing him into withdrawing his speedy trial request. At a December 2015 hearing, Walker requested a speedy trial on the record. In response, Walker's attorney—who had just been assigned to the case—said if Walker wants a speedy trial, "I can't represent him." Walker's attorney then had a brief discussion with Walker off the record about how "[s]ome attorneys may … accommodate [his] request" but Walker's attorney needed time to examine all of the materials. After the discussion, Walker's attorney informed the circuit court that Walker agreed with the attorney's explanation and agreed to withdraw his speedy trial request. Walker told the court, "That is correct."

¶20    Walker has failed to establish that his pretrial attorney performed deficiently in this regard. The circuit court found at the postconviction hearing that Walker was not coerced into withdrawing his speedy trial request and that Walker made the decision himself. These findings are not clearly erroneous because Walker confirmed at the December 2015 hearing that he agreed with his attorney's reasoning to not pursue a speedy trial and that he agreed to withdraw his speedy trial request. Accordingly, Walker's attorney was not ineffective for failing to pursue a speedy trial.

*B. Failure to investigate*

¶21    Walker next argues that his trial counsel performed deficiently by failing to investigate and retrieve several documents.    In particular, Walker contends that counsel should have retrieved Department of Workforce Development records, residential leases, CCAP records, employment records, Department of Motor Vehicle (DMV) records, and a hospital record.    He asserts that some of these documents would have established that the sexual assaults of Spencer could have occurred on only fourteen of the ninety days alleged in the operative Information and that the sexual assaults of Mason could have occurred on only eight of the ninety days alleged in the Information.    He further asserts that the remainder of the records could have shown flaws in Spencer's statement to police about the type of vehicle Walker drove and about Spencer not having spent time with Walker after the spring of 2011.[4]    Walker insists that these documents would have bolstered his credibility and impeached the victims.

¶22    Walker conceded at the ***Machner*** hearing that his trial counsel had visited him in jail "more than ten times" and that counsel's private investigator had visited him approximately five times.    Counsel testified that her private investigator had collected a DMV abstract (which might have shown Walker's ownership of certain vehicles) and had interviewed five potential witnesses. Counsel, however, could not "recall an instance where [Walker] asked [her] to do

---

[4] Walker suggests that an emergency room report would have shown that Spencer had been in a car accident with him in late August of 2011, which would have contradicted Spencer's statement to police that the did not spend time with Walker after the spring of 2011. The emergency room report, however, never mentioned Spencer, nor does it appear to contain any information relevant to the issues at trial. We therefore conclude that Walker's trial counsel was not deficient for failing to obtain this report.

something or get something and [she] didn't," nor could she recall Walker complaining about not having certain evidence for trial. She also testified that Walker benefited from the "unusual" circumstance of having two private investigators—counsel's investigator and a prior attorney's investigator.

¶23 We conclude that trial counsel's investigation did not fall "outside the wide range of professionally competent assistance." *See Strickland*, 466 U.S. at 690. Walker admitted at trial that he lived at the relevant residences and that he spent time with the victims during at least part of the time periods charged in the Information and alleged by the victims. Although some of these documents complained of might have narrowed the time in which the offenses could have occurred, they certainly did not rebut or discredit the victims' testimony about the general time frame in which the offenses occurred. In addition, documentary evidence confirming minor details—such as Walker's residence, his time of employment, and the type of vehicle that he drove—would have had minimal, if any, impact on his or the victims' credibility. If anything, this evidence would have supported the credibility of the victims because it confirmed that Walker had the opportunity to commit the offenses and that he was spending time with the victims. Under these circumstances, trial counsel was not deficient for failing to retrieve these documents.

## C. Failure to impeach the victims' testimony

¶24 Walker next argues that his trial counsel was ineffective for failing to effectively cross-examine the victims about their prior inconsistent statements and for failing to "point out" these inconsistencies to the jury. Walker claims that counsel made only a "perfunctory attempt" at impeaching Mason, failing to address Mason's prior statements about: (1) when the sexual assaults occurred;

(2) when he first tried alcohol; (3) Walker's confiscation of Mason's cell phone before the Green Bay sexual assaults; (4) where Mason fell asleep before the Green Bay sexual assaults; (5) how Mason woke up during the Green Bay sexual assaults; (6) the sexual acts involved in the Green Bay sexual assaults; (7) the gifts Walker purchased for Mason; (8) where Mason fell asleep during the sexual assault in Kewaunee; (9) whether Walker asked Mason if he wanted beer on August 1, 2015; and (10) whether Walker swore when telling Mason to get in his vehicle on August 1.

¶25   At the *Machner* hearing, Walker's trial counsel testified that she reviewed the victims' prior written statements and noted the differences in their statements. She further stated that she thought the victims testified "pretty well" at trial and that she was "pretty sure" she asked about the inconsistencies during cross-examination. Indeed, with respect to Mason, counsel cross-examined him about initially reporting that the Kewaunee sexual assault had occurred before the Green Bay sexual assaults. Notably, she did so even after the prosecutor had elicited similar testimony on direct-examination, where Mason acknowledged mixing up the sequential order of the sexual assaults. Counsel also asked Mason about where he slept during the Kewaunee incident and how he testified that he slept on the pull-out couch despite initially reporting that he slept on the floor. Counsel therefore sought to discredit Mason's testimony with some of his prior statements.

¶26   Although Walker identifies a number of other "inconsistencies" in Mason's testimony that were not addressed on cross-examination, many of those were inconsequential. For instance, Walker's trial counsel would not have meaningfully discredited Mason's testimony by addressing statements about Mason's first drink of alcohol, the circumstances of Walker confiscating Mason's

phone, the timing and nature of Walker's gifts to Mason, whether Walker asked Mason if he wanted beer on August 1, 2015, and whether Walker swore on August 1. These "inconsistencies," if any, were so minor that we question whether the average attorney would have identified them during trial or would have chosen to incorporate them into a cross-examination.[5] Many of them also involved facts that counsel might have reasonably wanted to avoid, such as Walker providing alcohol and giving gifts to Mason, and confiscating Mason's phone.

¶27 Further, Mason never made an entirely inconsistent statement about what sexual acts had occurred during the Green Bay sexual assaults. In Mason's first written statement to law enforcement, Mason said that Walker had "put his penis in [Mason's] rectum" during the Green Bay incident. Mason did not mention any other sexual acts, but he also never affirmatively stated that anal intercourse was the "only" sexual act or that no other sexual acts had occurred. In Mason's second written statement, upon further questioning, Mason noted that Walker had also "sucked on [Mason's] penis" and "grabbed [Mason's] hand and put it on [Walker's] bare penis" after the anal intercourse. Although Mason made these additional allegations in his second statement, they were not "inconsistent" with his allegations in the first statement, and they were consistent with his testimony at trial.

---

[5] Indeed, Walker's long list of possible inconsistencies is indicative of his ability to scrutinize every detail in Mason's prior written statements and trial testimony. Walker's trial counsel, however, did not have such a luxury at trial. Instead, counsel could note only the inconsistencies in the prior written statements and then attempt to catch any inconsistencies that emerged at trial. In essence, Walker is demanding perfection by suggesting that his trial counsel should have caught so many minor possible inconsistencies. But "counsel's performance need not be perfect, nor even very good, to be constitutionally adequate." *State v. Carter*, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695.

¶28 Under these circumstances, we conclude that Walker has not met his burden of showing that his trial counsel performed deficiently in her cross-examination and impeachment of Mason. Counsel elicited the important fact that Mason had changed his initial report about where and when the first sexual assault had occurred. Counsel also later emphasized, in closing argument, that the jury should not find Mason's testimony credible because rape "is a very traumatic event" and it is hard to believe that "someone who has been brutally raped will forget where or when it happened to them." Although counsel could have cross-examined Mason with other alleged inconsistencies, her failure to do so did not render her performance constitutionally inadequate.

¶29 Walker also argues that his trial counsel was ineffective for not "pointing out" the "inconsistencies" in Spencer's testimony. Walker identifies several possible inconsistencies, such as Spencer's report of when the sexual assaults occurred, whether Spencer realized on his own that he reported the wrong year in which the sexual assaults occurred, and whether Spencer accepted help from the detective investigating this case. Walker's argument fails for several reasons.

¶30 First, all but one of Walker's alleged inconsistencies were not inconsistencies in Spencer's testimony or his prior statement but, rather, conflicts between Spencer's trial testimony and other witnesses' testimony. Thus, because the jury was presented with all of this testimony at trial, the jury was able "to resolve any conflicts or inconsistencies in the evidence and to judge the credibility of the evidence." *See State v. Perkins*, 2004 WI App 213, ¶15, 277 Wis. 2d 243, 689 N.W.2d 684. Although Walker seems to suggest that his trial counsel should have cross-examined Spencer with this conflicting testimony, Spencer was the

13

first witness to testify at trial; therefore, all of the conflicting testimony emerged *after* Spencer testified.

¶31    Second, Walker's trial counsel questioned Spencer about the remaining inconsistency.  Specifically, counsel established on cross-examination that Spencer had initially reported that the sexual assaults occurred in 2012 but later stated that they occurred in 2011.  The jury was therefore presented with this inconsistency and could consider it in assessing Spencer's credibility.

¶32    Finally, to the extent that Walker is arguing that his trial counsel should have summarized during closing argument any inconsistency in, or conflict with, Spencer's testimony, that argument fails as well.  Counsel's closing argument reasonably focused on the implausibility of Spencer's allegations, noting that Walker's mother neither heard the sexual assaults nor woke up to Spencer walking through her bedroom to use the bathroom, which Spencer testified he did on the night of the sexual assaults.  Counsel also emphasized Spencer's possible motive to lie, stressing that Spencer did not disclose the sexual assaults until his mother confronted him about his drug use and that Spencer's disclosure created "a lot of positive attention" toward him.  Counsel could very reasonably choose to pursue these arguments instead of summarizing each possible conflict in the trial testimony.

¶33    In short, Walker's trial counsel did not perform deficiently in her impeachment of Spencer or her failure to "point[] out" to the jury the inconsistencies and conflicts in the trial testimony.

*D. Failure to object to the State's improper questioning and closing argument*

¶34    Walker argues that his trial counsel was ineffective for failing to object to the State's "improper questions" while cross-examining him.  Walker points out that the State asked him a number of questions regarding whether he was a "positive role model" when he sexually assaulted the victims.  For example, the State asked Walker:  "Again, were you trying to be a positive role model when you put your mouth on [Spencer's] penis and started sucking on his penis?"  Walker contends that these questions were argumentative and misleading.

¶35    The circuit court rejected Walker's argument that these questions were improper because Walker himself had advanced the "positive role model" theory as an explanation for spending time with young boys:  "[Y]ou talked about being a role model for these kids….  [The State] picked up on your theory of the case, on why you were with these kids and asked questions.  And I think [the State] asked legitimate questions based upon cross-examination."  The court further noted that Walker "said no, that didn't happen" and "[n]o, that's not true" to all of the State's questions.

¶36    Like the circuit court, we reject Walker's contention that his trial counsel performed deficiently by not objecting to the State's "role model" line of questioning.  Walker had testified on direct examination about being a role model, and, therefore, the State's questions were relevant to rebutting that testimony.  In addition, the jury would not have been misled by the State's questioning because the crux of the questions involved the conduct at issue, and Walker responded accordingly by testifying that he did not engage in the questioned conduct.  Walker has also failed to identify any legal authority on appeal showing that the State's questioning was improper.  We therefore conclude that any objection to the

State's line of questioning would have been meritless and that counsel was not deficient for failing to make a meritless objection. *See State v. Counihan*, 2020 WI 12, ¶51 n.15, 390 Wis. 2d 172, 938 N.W.2d 530 ("The failure to raise a meritless objection does not constitute deficient performance.").

¶37 Walker further criticizes his trial counsel for not objecting to the State's questioning about him being a role model for two other young boys who were not victims in this case. He contends that the State's prior "role model" questions would have led the jury to infer that Walker was also sexually assaulting these other boys as well. Again, we conclude that these questions were not improper. Walker had specifically testified to being a role model for these other boys during his direct examination. In addition, the State never implied that Walker had any sexual contact with these other boys; it simply asked: "You were trying to be a role model for those kids as well?" This line of questioning was also removed from the State's initial questioning about Walker being a role model during the sexual assaults at issue in this case. Thus, counsel was not deficient for failing to make a meritless objection to this additional questioning. *See id.*

¶38 Walker also argues—and the State agrees—that his trial counsel performed deficiently by failing to object to the State's "golden rule" argument in its closing argument. In a criminal case, a golden rule argument asks the jurors to consider themselves in the victim's shoes, which is prohibited because it appeals to the jurors' sympathy for the victim of a crime. *State v. DeLain*, 2004 WI App 79, ¶23, 272 Wis. 2d 356, 679 N.W.2d 562. At trial, the State made an improper golden rule argument by inviting the jurors at least three separate times to "imagine" themselves as the victims in this case. Walker's trial counsel did not object to the State's argument, and she therefore performed deficiently.

¶39     Nevertheless, Walker has failed to show prejudice as a result of his trial counsel's failure to object to the State's golden rule argument. Walker claims that if counsel had objected, his trial might have resulted in a different outcome because the State would have "clean[ed] up" its improper comments, thereby "reducing the confusion and emotional impact on the jury." As the State correctly observes, however, two different victims who did not know each other "testified to almost identical stories about being singled out in middle school and subjected to specific grooming behavior by [Walker] and then plied with alcohol and brutally assaulted." Thus, there is not a reasonable probability that, but for counsel's failure to object to the State's improper golden rule argument, the result of the proceeding would have been different. *See State v. Johnson*, 153 Wis. 2d 121, 132, 449 N.W.2d 845 (1990) (concluding there was no prejudice where defense counsel failed to object to the State's closing argument references to the defendant as a "liar," a "rapist" and "guilty").

¶40     Walker further criticizes his trial counsel for failing to object to the State's other comments in closing argument, including commenting on the credibility of the victims. Walker asserts that these comments were bolstering and testimonial in nature. Walker's argument is a nonstarter. Prosecutors have "considerable latitude" in closing arguments and can "comment on the evidence, detail the evidence, argue from it to a conclusion and state that the evidence convinces [the prosecutor] and should convince the jurors." *State v. Draize*, 88 Wis. 2d 445, 454, 276 N.W.2d 784 (1979) (citation omitted). None of the identified comments—including the State's discussion of the evidence supporting the credibility of the victims—suggested to the jury that they should rely on factors that were not supported by the evidence. *See id.* Accordingly, counsel was

not deficient for failing to make a meritless objection to these other closing arguments. *See Counihan*, 390 Wis. 2d 172, ¶51 n.15.

### E. Failure to present a defense

¶41 Finally, Walker argues that his trial counsel was ineffective because she "failed to raise a defense" and "ignored" Walker's claim of innocence. He contends that counsel failed to cross-examine the victims about their prior inconsistent statements, failed to present evidence that rebutted their allegations, failed to address the jury about the defense's theory of the case, and failed to point out the inconsistencies in the trial evidence to the jury.

¶42 Walker's claim is devoid of any factual basis in the record. As noted above, Walker's trial counsel cross-examined the victims about inconsistencies in their memory of the sexual assaults. Counsel also presented the testimony of both Walker and his mother to rebut the victims' accusations. In closing argument, counsel discussed several reasons to doubt the victims' testimony, such as the presence of other people who did not hear or witness the sexual assaults, Spencer's possible motive to lie, and Mason's confusion about where and when the sexual assaults occurred. Counsel also emphasized Walker's testimony that he did not have sexual contact or sexual intercourse with either of the victims. In short, counsel did not perform deficiently because she presented a rational defense based on the evidence at trial.

## II. Prosecutorial misconduct

¶43 Walker argues that the State engaged in prosecutorial misconduct by failing to amend the criminal complaint with new allegations regarding the timing and nature of the sexual assault charges. He contends that the complaint contained

"inaccurate information" which affected both his decision to waive a preliminary hearing and the circuit court's decision to admit other-acts evidence.

¶44 The State filed the criminal complaint in early August 2015, and Walker waived a preliminary hearing roughly two weeks later. At the hearing in which Walker waived a preliminary hearing, the State informed the circuit court that it had recently learned that the alleged time periods of the offenses were incorrect and that Walker's attorney had been informed that the dates would be changed. Three days later, the State filed an Information with the correct time periods alleged. Thereafter, the State filed an amended Information and later requested leave to file a second amended Information to charge additional crimes. Walker did not object to the filing of the second amended Information.

¶45 Walker has not established any misconduct in the State's actions, nor has he identified any relevant legal authority to support his claim. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address an argument that is unsupported by relevant legal authority). Nothing in the record suggests that the State knowingly alleged the wrong time periods or intentionally withheld additional allegations regarding Walker's conduct when filing the original complaint, and in failing to file an amended complaint. To the contrary, the State notified Walker's attorney and the circuit court when it learned of the incorrect dates alleged, and it sought leave to charge additional crimes—a request Walker did not oppose. Moreover, Walker provides no basis for us to conclude—nor has our review of the record shown—that either Walker's decision to waive the preliminary hearing or the court's decision to admit other-acts evidence would have been any different if the State had amended the complaint in accordance with Walker's argument.

19

¶46 Relatedly, Walker argues that he was improperly charged with Counts 6 and 7 in the second amended Information because those charges had no basis in the criminal complaint's allegations. He contends that those charges were "wholly unrelated" to any of the charges in the complaint.

¶47 We are not persuaded by Walker's arguments. "[A] district attorney may, where a preliminary examination is waived, file an information for *any* offense or offenses growing out of or relating to the transaction charged in the complaint." *State v. Michels*, 141 Wis. 2d 81, 88, 414 N.W.2d 311 (Ct. App. 1987) (citation omitted). Charges are transactionally related where "they are related in terms of 'the affinity of parties and witnesses, the charges' geographical and temporal proximity, the physical evidence required for conviction, and the defendant's motive and intent.'" *State v. White*, 2008 WI App 96, ¶11, 312 Wis. 2d 799, 754 N.W.2d 214 (citation omitted).

¶48 Here, Walker waived the preliminary hearing after he was charged with, among other things, one count of sexually assaulting Mason. That charge was based on an allegation in the criminal complaint that Walker had "put his penis in [Mason's] rectum." The State later charged two additional counts of sexual assault—the charges Walker now claims were improper—based on new allegations that immediately after Walker had put his penis in Mason's rectum, he also sucked on Mason's penis and put Mason's hand on Walker's penis. Thus, the two new charges involved the same parties, witnesses, geographical and temporal proximity, physical evidence, motive, and intent as the original charge because the new charges were based on Walker's other sexual assaults of Mason at the same time and place as the sexual assault initially charged. Accordingly, the State lawfully amended the Information to add two charges (Counts 6 and 7) for Walker's other sexual assaults of Mason. *See State v. Burke*, 153 Wis. 2d 445,

457-58, 451 N.W.2d 739 (1990) (concluding that new sexual assault charges added in the Information were "a proper exercise of prosecutorial discretion").

¶49    Walker last argues that the State engaged in prosecutorial misconduct by improperly using other-acts evidence as propensity evidence to establish the child enticement charge.  In particular, Walker contends that the State improperly suggested in closing argument that the jury should find Walker guilty of child enticement due to Walker's character.

¶50    The record belies Walker's claim.  The State had to establish that Walker was acting with the intent to have sexual contact with Mason on August 1, 2015.  *See* WIS. STAT. § 948.07(1).  The State therefore argued in closing argument that the jury should consider Walker's past behavior in Kewaunee to prove his intent:

> That final one is child enticement.…  That deals with [what] happened to [Mason] on August 1 when [Walker] was taking him to the hotel.  And the state has to prove that [Walker] was doing it because he was going to have sexual contact with him there.  So that's why you heard all the evidence to know what he was going to do there.  You heard about Kewaunee as well.  So you know what he was going to do.  *And that relates to his intent.*

(Emphasis added.)  Evidence of other crimes is admissible to prove intent, WIS. STAT. § 904.04(2)(a), and the circuit court expressly admitted the Kewaunee evidence for that purpose.  Further, the court instructed the jury about the proper use of the other-acts evidence, and we presume the jury followed that instruction.  *See State v. Dorsey*, 2018 WI 10, ¶55, 379 Wis. 2d 386, 906 N.W.2d 158.

21

### III. Sufficiency of the evidence

¶51    Walker next argues that the evidence was insufficient to support his child enticement conviction because the State failed to show that Walker enticed Mason and intended to have sexual contact with him. To prove the child enticement charge, the State had to prove: (1) that Walker caused or attempted to cause Mason to go into a vehicle, building, room or secluded place; (2) that Walker did so with the intent to have sexual contact with Mason in violation of WIS. STAT. § 948.02; and (3) that Mason had not attained the age of eighteen. *See State v. Hendricks*, 2018 WI 15, ¶21, 379 Wis. 2d 549, 906 N.W.2d 666. Whether the evidence was sufficient to support the jury's verdict is a question of law that we review de novo. *State v. Smith*, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410.

¶52    Here, Mason testified that in the fall of 2013, Walker took him to a motel in Kewaunee, provided him with alcohol, and later sexually assaulted him during the night. Mason further testified that on the evening of August 1, 2015, when Mason was fourteen years old, Walker gave him alcohol, drove him to two different motels, and attempted to check into a motel room. Mason testified that he ran away from the second motel because he did not want Walker to sexually assault him again. Given the similarities between Walker's conduct on August 1 and the prior sexual assault in Kewaunee, the jury could reasonably infer that Walker was attempting to take Mason into the motel room with the intent of having sexual contact with Mason. Again, the jury could infer Walker's intent from his actions on August 1 and the similarity between those actions and his past actions in Kewaunee.

22

¶53     Walker's arguments to the contrary are unpersuasive.  We must consider the evidence in the light most favorable to the State and the jury's verdict, *see id.*; therefore, we cannot accept Walker's inferences from the evidence because the evidence also supports reasonable inferences of Walker's guilt.  To the extent Walker asserts that there was no direct evidence of his intent, the circumstantial evidence in this case was sufficient to support reasonable inferences of his intent.  *See State v. Mertes*, 2008 WI App 179, ¶11, 315 Wis. 2d 756, 762 N.W.2d 813 ("A conviction may be supported solely by circumstantial evidence …."). We conclude the evidence was sufficient to support Walker's child enticement conviction.

## IV.  Juror misconduct

¶54     Walker argues that the jury engaged in misconduct and was biased against him because the jury deliberated for only forty-five minutes before finding him guilty on all nine charges.  Walker infers from the duration of the jury's deliberations and from the jury finding him guilty of child enticement that the jury failed to weigh the evidence.

¶55     Walker's argument has no basis in law or in fact.  Jurors are presumed to be impartial, and a party challenging a juror's impartiality bears the burden of rebutting this presumption and proving bias.  *State v. Funk*, 2011 WI 62, ¶31, 335 Wis. 2d 369, 799 N.W.2d 421.  Although Walker infers from the duration of the jury's deliberations that the jury failed to weigh the evidence, one could also reasonably infer that the evidence supporting Walker's convictions was overwhelming.  Walker has also failed to identify any legal authority supporting the notion that juror bias and impartiality can be proven by the duration of the jury's deliberations.  His argument therefore fails.  *See Pettit*, 171 Wis. 2d at

646-47. Furthermore, for the reasons we have already explained, the evidence was sufficient to support Walker's child enticement conviction.

## V. Other-acts evidence

¶56 Walker next argues that the circuit court erroneously admitted other-acts evidence. He contends that the court failed to weigh the prejudicial impact of that evidence and failed to consider how the jury may use it. Walker conceded at the postconviction hearing that the other-acts evidence was properly admitted for each of the sexual assault charges. Accordingly, we will address Walker's argument only in the context of the child enticement charge.

¶57 Other-acts evidence is admissible if: (1) it is offered for a permissible purpose, *see* WIS. STAT. § 904.04(2)(a); (2) it is relevant, *see* WIS. STAT. § 904.01; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice, *see* WIS. STAT. § 904.03. *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399. In the context of a child sexual assault case, the greater latitude rule permits "a more liberal admission of other crimes evidence" and applies to each prong of our other-acts analysis. *Id.*, ¶20 (citation omitted). "We review a circuit court's admission of other-acts evidence for an erroneous exercise of discretion." *Id.*, ¶17.

¶58 Contrary to Walker's argument, the circuit court considered the permissible purposes for the other-acts evidence and its prejudicial nature. The court stated at a February 2016 hearing that the other-acts evidence was offered for the permissible purposes of proving intent, opportunity, and the absence of mistake or accident. The court also stated that it did "not find that the probative value is substantially outweighed by the danger of unfair prejudice." In reaching this conclusion, the court noted that it could provide "a curative instruction if

24

requested by the defense" and that the greater latitude rule supported the admission of the other-acts evidence.

¶59    The circuit court's discussion of the other-acts evidence demonstrates a proper exercise of discretion.  Other-acts evidence can be used to prove intent, opportunity, and the absence of mistake or accident.  WIS. STAT. § 904.04(2)(a).  The court could also reasonably determine that a jury instruction would reduce the danger of unfair prejudice, *see State v. Davidson*, 2000 WI 91, ¶78, 236 Wis. 2d 537, 613 N.W.2d 606, and that the greater latitude rule supported the admissibility of the other-acts evidence, *see Marinez*, 331 Wis. 2d 568, ¶20. Furthermore, due to the similarities between the two incidents, the other-acts evidence from the Kewaunee incident was highly probative of Walker's intent during the August 1, 2015 incident, which further supports the court's conclusion that the probative value of the other-acts evidence was not *substantially* outweighed by the danger of unfair prejudice.

¶60    In passing, Walker suggests that the admission of the other-acts evidence violated his constitutional rights against double jeopardy because he had to defend against the other-acts evidence in this case and "will have to [do so] in the future" in Kewaunee County.  Walker's double jeopardy argument, however, is undeveloped and unsupported by any legal authority.  In any event, Walker's concern about a "future" prosecution does not create a double jeopardy violation in this case.  *See State v. Robinson*, 2014 WI 35, ¶22, 354 Wis. 2d 351, 847 N.W.2d 352 ("[The Double Jeopardy clause] protects against a *second* prosecution for the same offense after acquittal [or] … conviction[,] [a]nd it protects against multiple punishments for the same offense." (emphasis added; citation omitted)). Further, "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *United States v. Felix*, 503 U.S. 378, 386 (1992).

¶61    Walker also asserts that the circuit court erroneously relied on "faulty information" in the criminal complaint when deciding whether to admit other-acts evidence. This argument is related to Walker's earlier argument that Counts 6 and 7 of the second amended Information were not supported by the complaint's factual allegations. However, Walker again fails to identify any error. Nothing in the court's decision to admit other-acts evidence suggests that the court relied on the purportedly "inaccurate information"—i.e., that only one sexual assault of Mason occurred in Brown County or that the Brown County sexual assault occurred in the fall of 2014 instead of the summer of 2013. Even if we assumed that the court did rely on that information, there is no basis to argue or conclude that the court's decision to admit other-acts evidence would have been any different absent that reliance.

¶62    Finally, Walker contends that the circuit court improperly corrected a misstatement in the cautionary jury instruction by failing to identify the misstatement in the prior instruction and by failing to instruct the jury to disregard that misread instruction. At trial, the court misread the cautionary instruction regarding Walker's alleged conduct in Kewaunee, *see* WIS JI—CRIMINAL 275 (2018), in a manner that might have suggested that the other conduct had actually occurred. The possible error was called to the court's attention, and the court correctly reread the jury instruction, noting that the jury had to first find that Walker's conduct in Kewaunee had occurred before it could consider that conduct for the limited purposes of intent, opportunity, and the absence of mistake or accident. The court did not expressly note the mistake made in the prior instruction.

¶63    Walker's argument is misplaced. "The necessity for, the extent of, and the form of re-instruction rests in the sound discretion of the court." ***Hareng***

*v. Blanke*, 90 Wis. 2d 158, 166, 279 N.W.2d 437 (1979). Although another court might have specifically called attention to the precise error, the circuit court could reasonably decide not to call attention to the error and simply reread the jury instruction in its correct form. The court's statement that the prior instruction was incorrect would also communicate to the jury that it should follow the reread instruction and not the instruction previously read. Further, the record does not reflect that Walker objected to the court's procedure or demanded that the error be specifically identified to the jury. Under these circumstances, the court did not erroneously exercise its discretion in its correction of the misread jury instruction.

  *By the Court.*—Judgment and order affirmed.

  This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.