**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 1, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP289**

Cir. Ct. No.  2018ME30

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF E.W.:

WALWORTH COUNTY,

    PETITIONER-RESPONDENT,

  V.

E.W.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Walworth County: KRISTINE E. DRETTWAN, Judge. *Affirmed.*

¶1     GUNDRUM, P.J.[1]   Edward[2] appeals from orders of the circuit court extending his involuntary commitment under WIS. STAT. ch. 51 and continuing the involuntary administration of medication and treatment.[3]   He contends that if the court had not committed "plain error" by relying upon improperly admitted hearsay evidence presented at the hearing on the County's related petition, the evidence presented would have been insufficient to support the orders.   He additionally contends Wisconsin's involuntary medication statute, WIS. STAT. § 51.61(1)(g)3., is "facially unconstitutional when combined with the recommitment standard under WIS. STAT. § 51.20(1)(am)."   For the following reasons, we affirm.

### Background

¶2     In February 2022, Walworth County filed a petition to extend Edward's involuntary commitment.   Along with the petition, the County filed an affidavit of Samantha Sanders, a crisis case management employee for the County.   Edward contested the petition, and the circuit court held a hearing at which Sanders and Dr. Robert Rawski, an examining psychiatrist, testified.

---

[1]   This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]   Edward is a pseudonym.

[3]   We note that the commitment and involuntary medication and treatment orders Edward appeals are dated February 24, 2022.   Edward had filed several motions to extend the time to file a postdisposition motion or notice of appeal and did not file the notice of appeal until February 15, 2023.   By that time, the County had already filed a new petition for another extension of Edward's commitment.   After a trial to a jury, the circuit court entered orders extending Edward's commitment and involuntary medication and treatment through March 8, 2024.

¶3     Edward has been involuntary committed, but not continuously, since at least 2012. Rawski testified that he had last seen Edward in February 2020 for an annual commitment extension evaluation. Edward and Rawski "missed each other" in 2021, and Edward did not show up for the evaluation scheduled on February 4, 2022. As relevant here, Edward chose to stop receiving his required medication injection in December 2021 and, as of the date of the hearing, February 24, 2022, he had not received it.

## *Discussion*

### *Plain Error-Insufficiency of the Evidence Claim*

¶4     An individual is a proper subject for a recommitment under WIS. STAT. § 51.20(1) if the County proves by clear and convincing evidence that the individual is mentally ill, a proper subject for treatment, and dangerous. *See Langlade County v. D.J.W.*, 2020 WI 41, ¶31, 391 Wis. 2d 231, 942 N.W.2d 277. Edward does not dispute the circuit court's conclusions that he is mentally ill and a proper subject for treatment. He insists, however, the court erred in concluding the County met its burden to prove he is dangerous.[4]

---

[4] Edward also asserts the circuit court clearly erred in finding that Edward is "showing significant paranoid hostility toward his case manager, Ms. Sanders, who testified to that today." He states Sanders "said no such thing." In its response brief, the County concedes Sanders "did not use the words 'significant paranoid hostility' in her testimony," but then adds "however, … she did testify that she noticed changes in his behavior over the past year and that he was acting in ways that he had not done before" and then refers to the court's "numerous other factual findings, which were not erroneous, that support the recommitment." Edward does not counter the County's response in his reply brief. *See Hoffman v. Economy Preferred Ins. Co.*, 2000 WI App 22, ¶9, 232 Wis. 2d 53, 606 N.W.2d 590 (1999) ("An argument to which no response is made may be deemed conceded for purposes of appeal.").

(continued)

¶5     As indicated, Edward's challenge to the sufficiency of the evidence is founded upon his contention that the circuit court erroneously determined he was currently dangerous (i.e., dangerous at the time of the hearing) because it erroneously relied on "inadmissible hearsay" in making that determination. Importantly, he does not challenge the lawfulness of the court's orders on the basis that the evidence presented at the hearing was insufficient if we conclude, as we do, that the evidence Edward claims the court erroneously relied upon was in fact properly relied upon.[5]

¶6     Edward claims the "hearsay" evidence that was inappropriately admitted at the hearing includes statements related to him

> making threats and damaging property at a church in 2012. Then in 2017, there was a series of incidents reported in a petition for commitment, including swimming in the marina in Racine, sleeping in homeless shelters or on the streets of downtown Racine, sleeping in someone's yard, climbing onto someone's roof to watch the Fourth of July parade, destroying his television with a baseball bat, and sending threatening texts to a former girlfriend.

---

Our review of the transcript shows that while Sanders herself did not testify that Edward was "showing significant paranoid hostility" toward her, Rawski did. Rawski testified that Edward had displayed "subtle symptoms" in the prior year "includ[ing] a significant paranoid hostility toward his case manager," Sanders. Rawski further testified that Edwards "has been argumentative in a paranoid fashion with his case manager during attempts at reminding him of the conditions of commitment" and "[w]hat you see here is a paranoid argumentativeness with hostility which is a change from when he is asymptomatic." Thus, evidence was presented at the hearing supporting the court's finding that Edward had been "showing significant paranoid hostility toward" Sanders; the court's error in stating that this evidence came from Sanders when it actually came from Rawski is harmless.

[5] Edward summarizes his insufficient-evidence claim as "[w]*ithout the hearsay*, the admissible evidence showed only that [Edward] had been dangerous in the (fairly distant) past, that he did not want to take medication, and that he did not believe he needed it. Again, this was not enough to sustain" the circuit court's orders. (Emphasis added.) Edward does not contend that "even if" the circuit court did not commit plain error in admitting the "hearsay" evidence at the hearing, the totality of the evidence was nonetheless insufficient to support a determination of dangerousness.

4

He criticizes that "Dr. Rawski did not observe any of this behavior and relied entirely on the hearsay contained in his report." Edward next complains that Rawski

> relied entirely on the hearsay contained in his report for his assertions that [Edward] had become more hostile toward staff, displayed "a significant paranoid hostility toward his case manager," became "argumentative in a paranoid fashion" with her, and began "arguing semantics" with her about his medications…. Dr. Rawski also relied on "a reference to a paranoia exhibited in the office during interviews with Dr. Ortell."

¶7 Significantly, Edward did not object to any of the statements admitted at the hearing that he now claims constitute "inadmissible hearsay." And, as our supreme court has stated, "[H]earsay is competent evidence and may be admissible unless objected to." *Virgil v. State*, 84 Wis. 2d 166, 185, 267 N.W.2d 852 (1978). Due to his failure to (or decision not to) object, he has forfeited a direct challenge to the admission of the alleged hearsay evidence.[6] *See Waukesha County v. S.L.L.*, 2019 WI 66, ¶42, 387 Wis. 2d 333, 929 N.W.2d 140 (concluding that a WIS. STAT. ch. 51 committee forfeited her sufficiency of the evidence claim because she did not raise an objection on that basis before the circuit court); *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 ("[F]ailure to object [at trial] constitutes a forfeiture of the right on appellate

---

[6] Edward relies upon *S.Y. v. Eau Claire County*, 156 Wis. 2d 317, 457 N.W.2d 326 (Ct. App. 1990), *aff'd*, 162 Wis. 2d 320, 469 N.W.2d 836 (1991), in contending that the circuit court here could not rely upon the alleged "hearsay" evidence in determining dangerousness. In *S.Y.*, however, the alleged hearsay evidence *was objected to* on the basis that it was hearsay, but the objection was overruled by the circuit court. We held that the court erroneously exercised its discretion in admitting the evidence "[b]ecause there was no stated rationale for the [circuit] court's decision and because the County fail[ed] to identify any statutory or case law supporting its position on appeal." *Id.* at 328. Here, Edward did not object to the alleged hearsay evidence of which he now complains; therefore, the evidence constitutes "competent evidence." *See Virgil*, 84 Wis. 2d at 185.

review."). In such a circumstance, a challenge to the evidence is typically made within the context of an ineffective assistance of counsel claim. *State v. Counihan*, 2020 WI 12, ¶28, 390 Wis. 2d 172, 938 N.W.2d 530 ("Generally, if a claim is forfeited, we address that claim in the context of ineffective assistance of counsel."); *State v. Carprue*, 2004 WI 111, ¶47, 274 Wis. 2d 656, 683 N.W.2d 31; *Winnebago County v. J.M.*, 2018 WI 37, ¶¶7, 34, 45, 381 Wis. 2d 28, 911 N.W.2d 41. However, perhaps to avoid the difficult standard that must be met with an ineffective assistance of counsel claim, Edward does not make such a claim on appeal; instead, he attempts an end-around by asserting the circuit court committed "plain error" by allowing the unobjected-to "hearsay" evidence in at the hearing.

¶8 To succeed on a claim of "plain error," an appellant bears the burden of showing not only that an error was made, but that the error was "fundamental, *obvious*, and substantial." *See State v. Nelson*, 2021 WI App 2, ¶46, 395 Wis. 2d 585, 954 N.W.2d 11 (2020) (citation omitted). If that showing is made, "the burden then shifts to the [respondent] to show the error was harmless." *State v. Jorgensen*, 2008 WI 60, ¶23, 310 Wis. 2d 138, 754 N.W.2d 77. "If the [respondent] fails to meet its burden of proving that the error[] w[as] harmless, then the court may conclude that the error[] constitute[s] plain error." *Id.* "[C]ourts," however, "should use the plain error doctrine sparingly." *Nelson*, 395 Wis. 2d 585, ¶46 (citation omitted). We consider de novo whether plain error has occurred, *State v. Bell*, 2018 WI 28, ¶8, 380 Wis. 2d 616, 909 N.W.2d 750.

¶9 Edward's plain error contention fails to persuade. To begin, he simply claims, without developing the claim, that the statements he challenges were "hearsay." Not only does he fail to develop an argument as to why each challenged statement was admitted erroneously on the basis that it is hearsay, he

does not even attempt to convince us that any of the "errors" in admitting the statements were "fundamental, obvious, and substantial." He fails in his plain-error challenge right there.

¶10 Beyond that, as the County notes, "[m]any of the statements [Edward] asserts are hearsay, are not hearsay as they are admissions by [a] party opponent" that were "offered against him at the recommitment hearing." The County correctly points out, for example, that

> Rawski clearly states [in his report] that over the years, during their in person examinations, [*Edward*] admitted to him that he destroyed property at his church, swam in the marina, slept in homeless shelters and outside on the street, because he "wanted to see what it was like to be homeless," had made his mother frightened of him, and that his wife contacted police because she was concerned with [Edward's] behavior. (Emphasis added.)

Indeed, these "hearsay" statements are not hearsay at all, and therefore we see no error with their admission at the hearing, much less plain error.

¶11 As to whether other statements Edward complains about were erroneously admitted at the hearing, because he did not object to them at the hearing and has failed to develop an argument to convince us their admission was "fundamental, obvious and substantial" error, he has not convinced us the admission of any of the challenged statements constitutes plain error. As a result, we conclude that all of the challenged evidence was "competent evidence," *see Virgil*, 84 Wis. 2d at 185, for the factfinder, here the court, to consider. Because Edward's challenge to the circuit court's dangerousness determination is founded and dependent upon his incorrect contention that the circuit court committed plain error in admitting the now-challenged evidence at the hearing and relying on it in its decision, we need say no more on this issue.

***Edward's Constitutional Challenge***

¶12    Edward contends "the combination of [WIS. STAT.] § 51.61(1)(g)3., governing involuntary medication, and WIS. STAT. § 51.20(1)(am), governing recommitment, results in a statutory scheme that is facially unconstitutional," specifically asserting the scheme violates substantive due process protections.  To succeed on a facial constitutional challenge, a litigant must establish beyond a reasonable doubt that the statutory scheme is unconstitutional.  *See **Winnebago County v. C.S.***, 2020 WI 33, ¶14, 391 Wis. 2d 35, 940 N.W.2d 875.  Edward has failed to establish this.

¶13    Edward's modestly developed constitutional argument is founded upon his contentions that under WIS. STAT. § 51.61(1)(g)3., "the [County] is permitted to involuntarily medicate" a WIS. STAT. ch. 51 committee who is "not competent to refuse medication" without being required to prove that the person is dangerous; the statutory scheme "permits indefinite *involuntary medication* of individuals based solely on predictions of future potential dangerousness"; the prevention of "hypothetical future danger" is an insufficient basis for the "substantial interference with [a] person's liberty," that is, involuntarily medicating a person; these statutes allow for involuntary medication of people "to prevent them from possibly becoming dangerous at some future time"; involuntary medication "cannot be justified merely because an expert predicts that the person may become dangerous if unmedicated"; the statutory scheme "allows involuntary medication based on incompetence without dangerousness"; and "without a requirement of any recent act or omission, he can be forcibly medicated based on his past behavior and a prediction about his future behavior regardless of whether he actually poses any danger right now."  Edward's facial challenge falls quickly as its entire foundation—that a person can be involuntarily medicated without a

finding of current dangerousness—is simply incorrect. In fact, his contention borders on frivolous.

¶14 In the context of a facial substantive due process challenge stemming from a recommitment order, our state supreme court has held, fairly recently, that the very statute underpinning Edward's challenge here, WIS. STAT. § 51.20(1)(am) "is facially *constitutional* because it *requires* a showing of mental illness and *current dangerousness*, as due process demands." *Waupaca County v. K.E.K.*, 2021 WI 9, ¶21, 395 Wis. 2d 460, 954 N.W.2d 366 (emphasis added). As the *K.E.K.* court pointed out, this statutory provision "require[s] that the County prove, by clear and convincing evidence, that the individual is mentally ill, a proper subject for treatment, and *currently dangerous*." *Id.*, ¶26 (emphasis added).[7] So, the statute does require a showing of *current* dangerousness not merely a showing of "possibly becoming dangerous at some future time," as

---

[7] The *K.E.K.* court reiterated

> The dangerousness standard is not more or less onerous during an extension proceeding; the constitutional mandate that the County prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered. Each extension hearing requires proof of *current* dangerousness. It is not enough that the individual was at one point a proper subject for commitment. The County must prove the individual "*is* dangerous." The alternate avenue of *showing* dangerousness under paragraph (am) does not change the elements or quantum of proof required. It merely acknowledges that an individual may still be dangerous despite the absence of recent acts, omissions, or behaviors exhibiting dangerousness outlined in § 51.20(1)(a)2.a.-e.

395 Wis. 2d 460, ¶25 (quoting *Portage County v. J.W.K.*, 2019 WI 54, ¶24, 386 Wis. 2d 672, 927 N.W.2d 509).

Edward erroneously asserts.[8] The **K.E.K.** court could not have been clearer in saying that:

> [A]s we authoritatively determined in **J.W.K.**, WIS. STAT. § 51.20(1)(am) merely provides an alternative path for the County to prove *current dangerousness*—it does not change the requirement that the County prove, by clear and convincing evidence, that the individual is mentally ill, a proper subject for treatment, and *currently dangerous*. We reaffirm that determination.

*Id.*, ¶26 (emphasis added). Indeed, contrary to the requirement Edward appears to be impliedly requesting us to create through this appeal, the **K.E.K.** court specifically "decline[d] to create … a constitutional requirement that a county use recent acts or omissions at a commitment extension proceeding." *See id.*, ¶28. The court even went on to say that "to succeed on a [substantive] *due process* claim here, K.E.K. must prove that [WIS. STAT] § 51.20(1)(am) does not require a showing of current dangerousness. K.E.K. cannot do so because, as this court unanimously recognized, § 51.20(1)(am) creates an alternative evidentiary path to prove *current* dangerousness." *Id.*, ¶29. Lastly, the **K.E.K.** court concluded, "because … § 51.20(1)(am) requires proof of current dangerousness, it satisfies the Due Process Clause's requirements." *Id.*, ¶30. Edward's constitutional argument fails.

---

[8] Edward attempts to distinguish this case from **Waupaca County v. K.E.K.**, 2021 WI 9, ¶21, 395 Wis. 2d 460, 954 N.W.2d 366, because recommitment was at issue in **K.E.K.** and involuntary medication is at issue in this case. But, as Edward emphasizes in another section of his brief, quoting **Addington v. Texas**, 441 U.S. 418, 425 (1979), "[a] 'civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" Yet, he fails to sufficiently develop an argument as to why these two interferences with a person's liberty interests—recommitment and involuntary medication—should be treated differently. More importantly, the underpinning of his entire argument is his contention that WIS. STAT. § 51.20(1)(am) does not require a showing of current dangerousness, which, as we note, is directly at odds with **K.E.K.** and **J.W.K.**

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.